98 P.3d 827 (2004)
Joseph J. KIRBY and Deborah A. Kirby, husband and wife, Appellants,
v.
The CITY OF TACOMA, a municipal corporation; Ray Corpuz and "Jane Doe" Corpuz, husband and wife; Philip Arreola and "Jane Doe" Arreola, husband and wife; William Woodard and Catherine Woodard, husband and wife; Raymond Roberts and "Jane Doe" Roberts, husband and wife; David Brame and "Jane Doe" Brame, husband and wife; James Hairston and "Jane Doe" Hairston, husband and wife, Respondents.
Nos. 29963-1-II, 30747-2-II.
Court of Appeals of Washington, Division 2.
September 14, 2004.
Publication Ordered October 5, 2004.
*830 John Louis Messina, Jeremy Adam Johnston, Messina/Bulzonmi, Tacoma, Stephen Louis Bulzomi, Messina/Bulzomi, University Place, Cynthia M. Morgan, Law Offices of Reseburg & Morgan, Seattle, for Appellants.
Shelley Marie Kerslake, Kenyon Disend PLLC, Issaquah, Jon Jeffrey Walker, Tacoma City Attorneys Office, Tacoma, for Respondents.
HUNT, J.
Tacoma police officer Joseph Kirby appeals summary judgment in favor of the City of Tacoma, in which the trial court dismissed his claims of age and disability related employment discrimination, First Amendment violations, and intentional infliction of emotional distress. He also appeals the trial court's denial of his motion for relief from judgment based on newly discovered evidence. Kirby argues that (1) genuine issues of material fact exist as to his claims of discrimination and intentional infliction of emotional distress; (2) he properly pleaded a First Amendment claim; and (3) the trial court abused its discretion in denying the motion for relief from judgment. Holding that summary judgment dismissal of Kirby's claims was proper, we affirm.

FACTS

I. BACKGROUND
Kirby joined the Tacoma Police Department (TPD) in January 1983. He quickly received promotions to sergeant and lieutenant, received commendations and "outstanding" evaluations, placed first on the civil service captain's list, and was made a temporary captain for six months.
In January 1996, on promotion to lieutenant, Kirby was removed from the Clandestine Lab Team (CLT). Another officer, Sergeant Ramsdell, was allowed to remain on the CLT when he was promoted to lieutenant, because the team did not have another officer certified as a team leader. When another certified officer became available, Ramsdell was also removed from the CLT.
On March 4, 1997, Kirby became involved in police union activities. On September 15, 1998, he was diagnosed with a work-related stress disorder, about which he notified the City on July 31, 1998. His private physician provided psychiatric treatment from September 15, 1998, until March 26, 2001. Kirby was subjected to several psychiatric examinations to determine his fitness for duty, including one on September 9, 1998. Kirby twice reported himself unable to work due to stress-related illness.[1]
Kirby had a contentious relationship with the TPD command structure. On June 15, 1998, for example, TPD held a command staff meeting to discuss domestic violence between two TPD officers. Kirby had spoken with one of the involved officers over the weekend and related the conversation without saying that it was confidential or union-related.[2] When the bureau commander ordered Kirby *831 to write an administrative report on the incident, Kirby saluted and said, "F* *king Airborne, you'll get your report, but you won't like what it says."[3] Clerk's Papers (CP) at 269. Kirby wrote the report but improperly disseminated it, before submitting it to the bureau commander; as a result, Kirby was reprimanded for insubordination.
Kirby was the subject of numerous Internal Affairs (IA) investigations, some of which lasted for months and some for up to two years. TPD does not generally initiate IA investigations unless the incident would justify economic sanctions. Charles Meinema later testified, "[I]t seems whenever Joe Kirby has any kind of disagreement with a superior, the matter gets referred to IA, and this has happened to other people as well." CP at 412.
On Friday, August 20, 1999, Kirby learned of allegations that a TPD officer had attempted to bribe a citizen. The following Monday, he brought the allegations to a superior officer. Kirby was orally reprimanded and counseled for failure to inform the chief of police immediately. Kirby later testified that he did not tell the chief because he believed that the chief was likely to engage in a cover-up. No formal disciplinary action was taken against the officer allegedly involved in the bribery allegations.
On November 3, 1999, Kirby was orally reprimanded again, this time for having failed to support a superior officer's policies by expressing his (Kirby's) own opinion about the TPD's decision to transfer a secretary out of his division in October.
According to Kirby, TPD Chief Philip Arreola exhibited age discrimination when he (1) once referred to Kirby as the "old guard"; and (2) again, during a command staff meeting, said, "Now if I can just get some of these gray-haired old captains to leave, we can get you guys here at the table" (while addressing two younger officers who had just placed first and second on the captain's list). CP at 420. Another time, at a staff meeting, Kirby complained about administration of discipline procedures. Arreola told Kirby to stand down or he would suspend[4] him for having the audacity to challenge him in an open forum. Arreola never took any steps to suspend or terminate Kirby. According to Kirby, Arreola also seized his email account and conducted a "warrantless search of his emails" in retaliation for raising an issue about officer safety when serving warrants and potential TPD liability.[5]
In 1999 and 2000, TPD twice passed over 52-year-old Kirby for promotion to captain, even though he had been a temporary captain for the previous six months and had placed first on the civil service captain's list at the time of the appointments. Instead, TPD gave the positions to the two other candidates from the top three, who were 45 and 42 years old. Before passing over Kirby for promotion, the TPD had never passed over a lieutenant who placed first on the civil service captain's list, even though the City's personnel rules allowed selection of any candidate from the top three.
Arreola was no longer employed with the TPD when Kirby was passed over for captain; nor was Arreola involved in the promotion decisions at issue here. Rather, Chief James Hairston selected the other applicants over Kirby because they fit better into the organizational structure and had better team-working skills.[6]

II. PROCEDURE
Kirby sued the City, alleging continued harassment and discrimination during his employment with the TPD because of his *832 participation in protected union activities, his disability, and his age. He later amended his complaint, adding intentional infliction of emotional distress. Kirby also filed a Notice of Claim indicating his intent to assert constitutional tort claims under both the Washington State and Federal Constitutions.
The trial court granted the City's motions for partial summary judgment on all Kirby's claims, and dismissed the case. The court also dismissed Kirby's First Amendment claim, finding that the complaint failed properly to plead a First Amendment claim.
The trial court denied Kirby's motion for reconsideration under CR 59(a)(7),(8), and (9), in which he argued that he had presented sufficient evidence to defeat summary judgment on his claim of wrongful adverse employment action.
Kirby then moved for relief from judgment based on newly discovered evidence and fraud. On April 26, 2003, TPD Chief David Brame killed himself and his wife. The newspaper published an article about Chief Brame's prehire psychological evaluation, including the text of the evaluation. During discovery in Kirby's case, the City had claimed that their files did not contain prehire psychological screening material.
The trial court denied Kirby's motion. It concluded that Kirby did not properly plead a claim for discrimination based on union activity, and the evidence did not suggest that TPD discriminated against Kirby based on age, disability, or union activity.

ANALYSIS

I. STANDARD OF REVIEW
When reviewing an order of summary judgment, we engage in the same inquiry as the trial court. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). We must consider all facts submitted and all reasonable inferences from them in the light most favorable to the nonmoving party. Wilson, 98 Wash.2d at 437, 656 P.2d 1030. The nonmoving party may not rely on speculation, argumentative assertions that unresolved factual issues remain, or having its affidavits considered at face value. Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wash.2d 1, 13, 721 P.2d 1 (1986).
After the moving party has submitted adequate affidavits, the burden shifts to the nonmoving party to set forth specific facts sufficiently rebutting the moving party's contentions and disclosing the existence of a material issue of fact. Seven Gables, 106 Wash.2d at 13, 721 P.2d 1. We will uphold the ruling granting the motion only if, from all the evidence, reasonable persons could reach but one conclusion. Wilson, 98 Wash.2d at 437, 656 P.2d 1030.

II. EMPLOYMENT DISCRIMINATION

A. McDonnell Douglas Test
Washington courts apply the protocol developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) to determine the evidentiary burdens of the parties in discrimination cases. Hill v. BCTI Income Fund-1, 144 Wash.2d 172, 180, 23 P.3d 440 (2001); Grimwood v. Univ. of Puget Sound, Inc., 110 Wash.2d 355, 753 P.2d 517 (1988). Under this protocol, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. Hill, 144 Wash.2d at 181, 23 P.3d 440. If the plaintiff fails to establish a prima facie case, the defendant is entitled to judgment as a matter of law. Hill, 144 Wash.2d at 181, 23 P.3d 440.
If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory explanation for the adverse employment action. Hill, 144 Wash.2d at 181, 23 P.3d 440. If the defendant provides such a reason, the burden shifts back to the plaintiff to show that the employer's reason is actually a pretext for what, in fact, is a discriminatory purpose. Hill, 144 Wash.2d at 182, 23 P.3d 440; Grimwood, 110 Wash.2d at 364, 753 P.2d 517. If the plaintiff fails to make this showing, the defendant is entitled *833 to judgment as a matter of law. Hill, 144 Wash.2d at 182, 23 P.3d 440.

B. Adverse Employment Actions
Washington courts have defined "adverse employment action." According to our Supreme Court, discrimination requires "an actual adverse employment action, such as a demotion or adverse transfer, or a hostile work environment that amounts to an adverse employment action." Robel v. Roundup Corp., 148 Wash.2d 35, 74 n. 24, 59 P.3d 611 (2002).
Federal law provides further guidance. An actionable adverse employment action must involve a change in employment conditions that is more than an "inconvenience or alteration of job responsibilities," DeGuiseppe v. Vill. of Bellwood, 68 F.3d 187, 192 (7th Cir.1995), quoting Crady v. Liberty Nat'l Bank & Trust Co. of Indiana, 993 F.2d 132 (7th Cir.1993), such as reducing an employee's workload and pay, Ray v. Henderson, 217 F.3d 1234, 1243-44 (9th Cir.2000). In contrast, yelling at an employee or threatening to fire an employee is not an adverse employment action. See Munday v. Waste Mgmt. of N. Am. Inc., 126 F.3d 239, 243 (4th Cir.1997).
Kirby alleges numerous adverse employment actions. The City concedes that TPD's failure to promote Kirby to permanent captain alleges an adverse employment action. The other alleged events, however, were disciplinary or investigatory in nature and, therefore, do not constitute adverse employment actions under the cases cited above. At most, these events were inconveniences that did not have a tangible impact on Kirby's workload or pay.

1. Hostile work environment
Kirby did not argue on summary judgment that TPD created a hostile work environment amounting to an adverse employment action. Generally, we do not consider on appeal issues not raised in the trial court. RAP 9.12. Accordingly, we do not consider Kirby's argument that the City engaged in an adverse employment action stemming from a hostile work environment.

2. Age discrimination

a. No prima facie case
To establish a prima facie case of age discrimination, Kirby had to show: (1) he was within the statutorily protected age group; (2) he applied and was qualified for an available promotion; (3) he was not offered the position; and (4) the promotion went to a significantly[7] younger person. Kuyper v. Dep't of Wildlife, 79 Wash.App. 732, 735, 904 P.2d 793 (1995), review denied, 129 Wash.2d 1011, 917 P.2d 130 (1996). Kirby satisfies the first three elements. He was over 40 years old at the time of the two captain promotions. He was first on the captain's list, had served as a temporary captain, and had received awards and commendations.
Viewing the facts and all reasonable inferences in the light most favorable to Kirby, it appears he was likely qualified for a captain position. But he was not offered the captain position. Instead, it went to a somewhat younger candidate on both occasions. But to establish a successful claim of wrongful discharge due to age discrimination, and to satisfy the fourth prong of the prima facie case, the replacement must be someone not in the protected class. See Chen v. State of Wash., 86 Wash.App. 183, 189, 937 P.2d 612 (1997). Here, the officers promoted to captain were only seven or 10 years younger than Kirby, and they were within the same protected age group (i.e. 40-70 years old). See Brady v. Daily World, 105 Wash.2d 770, 777, 718 P.2d 785 (1986) (replacement must be outside the protected age group). Thus, *834 Kirby did not establish wrongful discharge due to age discrimination.[8]

b. No pretext
Nor can Kirby establish "pretext" without evidence that the City's articulated reasons for its promotion decisions are unworthy of belief. Kirby has failed to show that the City's articulated reasons: (1) have no basis in fact; (2) were not really motivating factors for the decision; or (3) were not motivating factors in employment decisions for other employees in the same circumstances. Kuyper, 79 Wash.App. at 738-39, 904 P.2d 793.
Kirby cites Arreola's references to older officers as the "old guard" and getting "gray-haired old captains to leave." But Arreola was no longer working for the TPD when it promoted the two other officers and he was not involved in the promotion decisions.[9] Arreola's comments, therefore, cannot impute discriminatory intent to the City.[10]See Price Waterhouse v. Hopkins, 490 U.S. 228, 277, 109 S.Ct. 1775, 1805, 104 L.Ed.2d 268 (1989) (O'Connor J. concurring) (finding that statements by non-decision makers are insufficient to establish discriminatory intent).
Accordingly, we hold that the trial court properly granted summary judgment on Kirby's age discrimination claim.

3. Disability discrimination
Kirby also claims that he received disparate treatment from the TPD due to his disability. A prima facie case of disparate treatment requires the plaintiff to show that (1) he is in a protected class (disabled); (2) suffered an adverse employment action; (3) was doing satisfactory work; and (4) was treated differently than someone not in the protected class. Roeber v. Dowty Aerospace, 116 Wash.App. 127, 135, 64 P.3d 691, review denied, 150 Wash.2d 1016, 79 P.3d 446 (2003).
Kirby satisfies the elements of the prima facie case for disparate treatment based on his disability. He was diagnosed with a stress disorder, which is a mental disability. See RCW 49.60.180. He suffered an adverse employment action when the City failed to promote him to permanent captain. Viewing the facts and inferences in the light most favorable to Kirby, there is no reason to doubt that his work was satisfactory for a time and in some respects. And there is no evidence that the candidates promoted over him to permanent captain manifested any disabilities.
Kirby having established a prima facie case of disability discrimination, the evidentiary burden shifted to the City to produce a legitimate nondiscriminatory explanation for its adverse employment action. Hill, 144 *835 Wash.2d at 181, 23 P.3d 440. The City did this. The City did not select Kirby for promotion to captain because he was, by his own admission, a "poor fit" for the command structure. He was lacking in teamwork and ability to build consensus or partnerships necessary to move the organization forward.
The burden then shifted back to Kirby to present evidence that the City's explanation for passing over Kirby for promotion is unworthy of belief. Kuyper, 79 Wash.App. at 738, 904 P.2d 793. Kirby offers little more than his testimony that he believed his disability played a substantial role in the adverse employment action taken against him. But "[p]laintiff's conclusory opinions do not amount to material facts admissible in evidence showing there is a genuine issue for trial." Grimwood, 110 Wash.2d at 365, 753 P.2d 517.
Moreover, Kirby fails to offer any specific instances of conduct or discipline constituting discrimination based on his disability. Where "the plaintiff has produced no evidence from which a reasonable jury could infer that an employer's decision was motivated by an intent to discriminate, summary judgment is entirely proper." Kuyper, 79 Wash.App. at 739, 904 P.2d 793. Such is the case here.

4. First Amendment and public policy
Kirby never pleaded below that the City discriminated against him and violated his First Amendment rights[11] for acting as a union advocate. Rather, he first raised the First Amendment claim in his memorandum in opposition to the City's motions for summary judgment. And he first introduced his claim of adverse employment action in violation of public policy at oral argument on the City's motions for summary judgment.[12]
CR 8(a) requires that a complaint for relief "contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief and (2) a demand for judgment for the relief to which he deems himself entitled." The complaint must "apprise the defendant of the nature of the plaintiff's claims and the legal grounds upon which the claims rest." Molloy v. Bellevue, 71 Wash.App. 382, 385, 859 P.2d 613 (1993), review denied, 123 Wash.2d 1024, 875 P.2d 635 (1994). "A pleading is insufficient when it does not give the opposing party fair notice of what the claim is and the ground upon which it rests." Dewey v. Tacoma School Dist. No. 10, 95 Wash.App. 18, 23, 974 P.2d 847 (1999), quoting Lewis v. Bell, 45 Wash.App. 192, 197, 724 P.2d 425 (1986).
Kirby's "Notice of Claim" failed to provide the City adequate notice of the nature of the claims against which it would have to defend. The trial court noted that "the words `free speech' or `first amendment' usually manage to alert the other side."[13] Report of Proceedings (RP) (1/10/2003) at 43. But Kirby's "Notice of Claim" merely referenced "constitutional tort claims." The variation among potential constitutional tort claims is significant. As the City argued at summary judgment, this variation presented myriad ways of proceeding with a defense and conducting discovery, resulting in actual prejudice to the City. The City should not be required to guess against which claims they will have to defend.
CR 15 specifically provides for amendment to add or to remove claims from an action. But Kirby did not follow the proper procedure; instead, he filed a "Notice of Claim." As the City argues, this method of practice "would be unfair to opposing parties and undermine the ability of trial courts to control the cases on their busy dockets." Br. of Respondent at 38. We have previously rejected *836 such tactics in Dewey, 95 Wash.App. at 25, 974 P.2d 847.
The plaintiff in Dewey failed to satisfy the liberal "notice pleading" standards because his complaint did not contain the words "First Amendment" or "free speech." Dewey, 95 Wash.App. at 23, 974 P.2d 847. We noted, "Although inexpert pleading is permitted, insufficient pleading is not." Id. We held that the complaint did not "identify a free speech or First Amendment theory, nor [did] it fairly imply such a theory." Id. at 25, 974 P.2d 847.
Similarly, Kirby's "Notice of Claim" did not mention free speech or the First Amendment. Rather, at best it arguably implied such a claim under its pleaded "constitutional tort claim," which could include a First Amendment claim. Although it is possible to try an unpleaded claim by implication,
[i]n determining whether the parties impliedly tried an issue, an appellate court will consider the record as a whole, including whether the issue was mentioned before the trial and in opening arguments, the evidence on the issue admitted at the trial, and the legal and factual support for the trial court's conclusions regarding the issue.
Dewey, 95 Wash.App. at 26, 974 P.2d 847 (citing Fed. Signal Corp. v. Safety Factors, Inc., 125 Wash.2d 413, 435-36, 886 P.2d 172 (1994)). But a defendant's argument that the plaintiff failed to plead a First Amendment theory of recovery does not amount to a "trial" of the issue. Dewey, 95 Wash.App. at 26, 974 P.2d 847.
Here, the City argued at summary judgment that Kirby failed properly to plead a First Amendment theory of recovery. Only after this argument did the City hesitantly[14] attack the merits of Kirby's unpleaded claims. The City should not be penalized for attempting a defense for which it was ill prepared as a result of Kirby's procedural failures.
Kirby based the public policy component of his attempted First Amendment claim for adverse employment action on Robel v. Roundup, 148 Wash.2d at 50, 59 P.3d 611; specifically, the portion of the opinion entitled "Retaliation for Filing Workers' Compensation Claim." Robel, 148 Wash.2d at 48, 59 P.3d 611. Washington's Industrial Insurance Act provides,
No employer may discharge or in any manner discriminate against any employee because such employee has filed or communicated to the employer an intent to file a claim for compensation or exercises any rights provided under this title.
Robel, 148 Wash.2d at 48-49, 59 P.3d 611 (citing RCW 51.48.025(1)). Kirby argues that Robel created a common law tort for adverse employment action in violation of public policy and derives elements from those the Robel court used in applying a particular antidiscrimination statute (RCW 51.48.025(1)). He is incorrect. As Division Three of this court has expressly recognized:
The issue in Robel was entirely statutory. It did not involve a claim for the common law tort of wrongful retaliation in violation of public policy. The dissenting opinion in Robel incorrectly contended the majority `extends the tort of wrongful discharge ... to encompass an act by an employer short of actual or constructive discharge.'
Korslund v. Dyncorp Tri-Cities Services, Inc., 121 Wash.App. 295, 317, n. 8, 88 P.3d 966 (2004).[15]
Kirby's tort claim, at best, is an offshoot of his inadequately pleaded First Amendment claim. Just as his First Amendment claim fails, so does his public policy claim fail.
*837 "A party who does not plead a cause of action or theory of recovery cannot finesse the issue by later inserting the theory into trial briefs and contending it was in the case all along." Dewey, 95 Wash.App. at 26, 974 P.2d 847. See Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir.1996) ("a plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."). The trial court properly granted summary judgment on and dismissed Kirby's claim of discrimination due to protected union activities.

5. Intentional Infliction of Emotional Distress
The elements of the tort of outrage are: "(1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress." Birklid v. Boeing Co., 127 Wash.2d 853, 867, 904 P.2d 278 (1995) (citation omitted). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Grimsby v. Samson, 85 Wash.2d 52, 59, 530 P.2d 291 (1975). Furthermore, "liability in the tort of outrage does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Grimsby, 85 Wash.2d at 59, 530 P.2d 291.
Whether conduct is sufficiently outrageous is ordinarily a jury question. Nonetheless, the trial court must initially determine if reasonable minds could differ on whether the conduct was extreme enough to result in liability. Dicomes v. State, 113 Wash.2d 612, 630, 782 P.2d 1002 (1989).
In Dicomes, the State terminated an executive secretary from her administrative position because she had revealed budget information to interested third parties. Dicomes, 113 Wash.2d at 615-16, 782 P.2d 1002. She claimed the discharge constituted outrageous conduct because it allegedly showed her to be an incompetent and disloyal employee. Dicomes, 113 Wash.2d at 630, 782 P.2d 1002. She further argued that management created an intentionally false report for the sole purpose of embarrassing, humiliating, and then terminating her. Dicomes, 113 Wash.2d at 630, 782 P.2d 1002. The Supreme Court disagreed and held that "even if the purpose of the study was to fire plaintiff, the fact of the discharge itself is not sufficient to support a claim of outrage," reasoning that "mere insults and indignities, such as causing embarrassment or humiliation, will not support imposition of liability on a claim of outrage." Dicomes, 113 Wash.2d at 630, 782 P.2d 1002, citing Grimsby, 85 Wash.2d at 59, 530 P.2d 291.
Dicomes is analogous to Kirby's case. When viewed in the light most favorable to Kirby, all of the adverse employment actions Kirby alleged are little more than insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Workplace disciplinary actions such as writing administrative reports, receiving oral reprimands, and internal affairs investigations are not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Grimsby, 85 Wash.2d at 59, 530 P.2d 291. Nor do threats to terminate or to suspend constitute outrageous conduct in light of Dicomes, where not even actual termination constituted outrageous conduct. Moreover, Kirby was not even terminated, as in Dicomes. Rather, he was passed over for a promotion based on negative reviews by his supervisors and negative predictions about his ability to advance team goals.
Kirby has failed to set forth specific facts showing a genuine issue of material fact as to his claim of outrageous conduct. Therefore, we hold that summary judgment on this claim was also proper.

III. MOTION FOR RELIEF FROM JUDGMENT

A. Standard of Review
We review the trial court's denial of a motion for relief from judgment for abuse of discretion. In re Marriage of Scanlon v. Witrak, 110 Wash.App. 682, 686, 42 P.3d 447, review denied, 147 Wash.2d 1024, 60 P.3d 92 (2002). A trial court abuses its discretion *838 when it exercises that discretion on untenable grounds or for untenable reasons. Scanlon, 110 Wash.App. at 686, 42 P.3d 447.

B. Newly Discovered Evidence
Kirby contends that newly discovered information from the media showed: (1) former TPD Chief David Brame confessed to committing an armed rape, yet he was not disciplined; and (2) before being hired, Brame was not recommended for employment with the TPD based on a psychologist's evaluation. Kirby argues that this newly discovered information highlights the disparate treatment between himself and other TPD members. We disagree.
Kirby is correct that showing the defendant treated similarly situated employees outside of the plaintiff's class more favorably would generally be probative of pretext.[16]Vasquez v. County of L.A., 349 F.3d 634, 641 (9th Cir.2003). But here, as the City argues, "[T]he events are so remote in time to the period during which Kirby claims to have been discriminated against, that they lack probative value." Br. of Respondent at 47.
Kirby claims that TPD's discrimination against him began on October 1, 1996. But Brame was hired in 1981, 15 years before the City's alleged discrimination against Kirby, and Brame's alleged rape occurred in 1988, eight years earlier. In light of such large time gaps, Brame and Kirby cannot have been "similarly situated" employees to show disparate treatment. Eight and 15-year spans allow for numerous personnel and policy changes.
Thus, this newly discovered information could not help Kirby show that he was treated less favorably than a similarly situated employee. We hold that the trial court did not abuse its discretion in denying Kirby's motion for relief from judgment.

IV. ATTORNEY FEES
In a separate section of its brief, the City requests costs and statutory attorney fees. According to RAP 14.2, "[T]he appellate court will award costs to the party that substantially prevails on review, unless the appellate court directs otherwise in its decision terminating review." Accordingly, we award the City costs and statutory attorney fees. RAP 14.1; RAP 14.2; RAP 14.3.
Affirmed.
We concur: MORGAN, A.C.J., and VAN DEREN, J.
NOTES
[1] These incidents occurred on July 31, 1998, and March 15, 1999.
[2] Kirby did not raise the union advocacy issue until sometime after the meeting. Clerk's Papers (CP) at 288.
[3] Kirby testified at deposition that he was in jeopardy of termination if he did not divulge the conversation.
[4] Kirby claims that Arreola threatened to suspend him. But, Kirby's declaration and deposition state that Arreola threatened to terminate his employment.
[5] The TPD email system and all emails generated on the system are City property, and the email system is limited to official business. Information on the email system can be considered a public record, subject to public disclosure.
[6] At trial, Kirby testified, "I also believe that Mike Darland made an accurate statement when he said in deposition that he did not select me because basically I was not a good fit for the current command structure." CP at 561.
[7] See Hill, 144 Wash.2d at 188, 23 P.3d 440 (in the context of a wrongful discharge due to age claim the plaintiff must show that he was replaced by a significantly younger person.). See also O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 313, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996) (Adopting requirement that replacement worker must be "substantially younger" than plaintiff alleging age discrimination under Age Discrimination in Employment Act to make prima facie case).
[8] Even assuming, without deciding, that Kirby had established the prima facie elements of an age-discrimination case, he fails to rebut the City's articulated non-discriminatory reasons for promoting the other candidates to captain. Kirby even agreed with one command staff member's reason for not selecting Kirby: "I was not a good fit for the current command structure." CP at 561. Kirby distrusted the command staff and disapproved of their management style.

Kirby also publicly disagreed with command staff decisions. While serving as temporary captain, he was disciplined for failing to support policies of a superior officer, deliberately failing to cooperate with peers, and failing to notify the chief of a serious incident involving the integrity of another officer.
Furthermore, TPD policy allowed management to select from any of the top three candidates. Kirby has neither alleged nor shown that the candidates promoted to captain were not qualified. That the TPD lawfully chose a different qualified candidate, who happened to be younger, is not sufficient to establish that the TPD intended to discriminate against him. See Kuyper, 79 Wash.App. at 738, 904 P.2d 793. The City demonstrated legitimate, non-discriminatory reasons for promoting the other candidates over Kirby.
[9] James Hairston became chief in December 1998 and was the chief who made the final decisions on the captain promotions.
[10] Even if Arreola had been the decision maker, such stray remarks would not have given rise to an inference of discriminatory intent. Pottenger v. Potlatch Corp., 329 F.3d 740, 747 (9th Cir.2003). See also Smith v. Firestone Tire & Rubber Co., 875 F.2d 1325, 1330 (7th Cir.1989) (noting that stray "remarks, ... when unrelated to the decisional process, are insufficient to demonstrate that the employer relied on illegitimate criteria, even when such statements are made by the decision-maker in issue."). Arreola's comments were insufficient evidence from which to infer that the City's articulated reasons for the promotions were merely pretext for discrimination.
[11] U.S. CONST. amend. I.
[12] Kirby did file a "Notice of Claim" document stating "plaintiffs intend to assert constitutional tort claims under both the Washington State and Federal Constitutions." CP at 155-56. Kirby contends that this notice of claim, in conjunction with a reference to an administrative claim in his complaint, is sufficient to satisfy Washington's liberal notice pleading requirements because he thereby provided sufficient notice to the City of its First Amendment violations. The discussion of Dewey satisfactorily resolves this issue in the City's favor.
[13] Kirby's counsel admitted, "The language of the complaint is broad enough, although I agree it doesn't specifically state first amendment language." RP (1/10/2003) at 32.
[14] See RP (1/10/2003) at 16 ("Now, we were at somewhat of a disadvantage in responding to the motion in this way because we don't fully understand plaintiff's claim, but we did the best we could with the information we had.")
[15] Kirby's attempted reliance on Robel fails for another reason. His asserted "creation" of this cause of action derives, not from the majority opinion, but rather from a dissent, which contends, "[T]he majority extends the tort of wrongful discharge ... to encompass an act by an employer short of actual or constructive discharge." Robel, 148 Wash.2d at 70, 59 P.3d 611 (Bridge, J., dissenting in part). Kirby's misplaced reliance on the minority dissent's interpretation of the majority's decision in Robel (which applied RCW 51.48.025(1) to the particular facts) fails to establish his tort claim.
[16] Similarly situated employees must have the same supervisor, be subject to the same standards, and have engaged in the same conduct. Vasquez v. County of L.A., 349 F.3d 634, 641-42, n. 17. (9th Cir.2003).