IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| WILL T. PAYNE, | ) | No. 33537-2-III |
| Appellant, | ) ) | |
| v. | ) ) | |
| JOHN "STACY" and SHARIE KAY | ) | UNPUBLISHED OPINION |
| RUEGSEGGER, | ) ) | |
| Respondents. | ) | |

FEARING, C.J. — The trial court dismissed on summary judgment plaintiff Will Payne's suit against John and Sharie Ruegsegger for moneys owed under a real estate contract on the basis that the agreement was not enforceable. The trial court also refused to entertain Payne's claims for equitable estoppel, unjust enrichment, and constructive trust because Payne failed to plead these equitable theories. Will Payne appeals. We affirm.

FACTS

On March 5, 2003, the State of Alaska sold, on contract, Alaska real property to Lisa and Woodrow Allen. On December 27, 2007, Lisa and Woodrow Allen assigned their purchasers' interest in the real estate contract to Will Payne, a Spokane jewel dealer. That same year, a mutual friend introduced Payne to John Ruegsegger. Payne mentored Ruegsegger in gem trading, and Ruegsegger purchased gemstones from Payne as investments. The two gentleman began a friendship.

In January 2008, Will Payne approached John Ruegsegger and the latter's wife, Sharie, about purchasing Alaska real property. Payne declared that he owned land lots in Alaska and offered to sell a lot to John Ruegsegger for an investment. The two discussed a sale several times. Payne showed Ruegsegger a hand-drawn map and described the property as enjoying an ocean view and an access road connecting the lot to the county road.

On February 5, 2008, Will Payne, as seller, and John and Sharie Ruegsegger, as buyers, signed a single-page document designed for use as an addendum to a real estate purchase agreement. The document read:

> ADDENDUM to that Real Estate Purchase and Sale Agreement dated February 5th, 2008 between Will T. Payne hereinafter known as the Seller, and J. Stacy and Sharie Ruegsegger hereinafter known as the Purchaser of the property commonly known as Whale Passage, Alaska and legally described as: Lot 9-B, B Portion of lot 9, Block 13, ALS 2000-26 as shown on Plat No. 2000-20 Petersburg Recording district Alaska situated in the County of Petersburg District, State of Alaska

2

SAID AGREEMENT is hereby amended to read as follows:

The following purchase is agreed upon between seller and buyer as above in the amount of $60,000.00 with 12,000.00 down (check) and a balance of $48,000.00 to be paid in certified fund at 9% for 15 years to be carried by seller per promissory note attached.

The property is sold as is including power at property line as shown in addendum A

ALL OTHER terms and conditions of said Real Estate Purchase and Sale Agreement shall remain the same.

THE ABOVE has been read and is agreed to by the undersigned this:

| 5th day of February 2008 | 5th day of February 2008 |
|---|---|
| J Stacy Ruegsegger | Will T. Payne Feb. 5, 2008 |
| Purchaser | Seller |
| Sharie Ruegsegger | |
| Purchaser | Seller |

Clerk's Papers (CP) at 7 (handwritten portions are underlined).

Although the one-page document claims to modify a real estate purchase and sale agreement, no prior agreement existed. The parties also never executed the promissory note referenced in the document. The document mentioned an addendum A, but neither party, during litigation, produced an addendum to the document. Will Payne claims addendum A was a simple map and legal description of the property.

John and Sharie Ruegsegger paid Will Payne $12,000 as down payment for the purchase of the Alaska property. Thereafter, the Ruegseggers, nearly each month and usually in the sum of $500, periodically forwarded partial payments to Payne, and he sometimes provided handwritten receipts for the payments. The Ruegseggers aver that they paid $39,286.85 to Payne and that he never provided receipts for many of the

3

payments. Payne contends the Ruegseggers owe a balance of $38,000.00, a figure suggesting the Ruegseggers paid a lesser sum.

On December 29, 2008, Will Payne recorded a deed showing the State of Alaska granted him ownership of the Alaska land. On May 11, 2009, Payne executed a statutory warranty deed transferring title of the Alaska property to the Ruegseggers. John and Sharie Ruegsegger discontinued paying Will Payne on the real estate contract after October 2012. Payne spoke with John Ruegsegger numerous times about the Ruegseggers' failure to pay, and, on April 10, 2014, Payne sent them a formal notification and request for payment.

## PROCEDURE

Will Payne sued John and Sharie Ruegsegger. The complaint, captioned Complaint for Money Owed, contains sections titled jurisdiction, events, damages, and prayer for relief. The complaint does not list causes of action, but alleges that the Ruegseggers owe $38,000 plus prejudgment interest. Payne's prayer for relief requested:

> 1. That judgment be entered against the Defendants individually and any marital community if applicable in the principal amount of $38,000.00 with prejudgment interest to the date of entry of judgment;
> 2. That the court award attorney fees and costs as permitted by law or contract;
> 3. For judgment for such other and further relief as the courts deems [sic] just and proper.

CP at 5.

John and Sharie Ruegsegger answered the complaint and raised affirmative

4

defenses, including failure to state a claim, lack of subject matter jurisdiction, improper venue, waiver, estoppel, unclean hands, material breach, failure to mitigate, statute of frauds, consumer protection violations, lack of consideration, lack of essential terms, accord and satisfaction, and fraud. The Ruegseggers also asserted counterclaims for violations of the Consumer Protection Act, chapter 19.86 RCW, constructive fraud, and unjust enrichment.

John and Sharie Ruegsegger moved for summary judgment. With the motion, the couple argued that the one-page sale document is unenforceable because it lacks essential elements of a contract to sell real estate, the terms of the document show no meeting of the minds, and Will Payne's claim is not ripe because the contract contains no acceleration clause. The Ruegseggers sought attorney fees under RCW 4.84.185 for defending against Payne's frivolous claims. They also filed a supplemental memorandum to support an award of fees, in which memorandum they argued that Payne knew he could not sell the land because it violated an Alaska statute. On response to the Ruegseggers' summary judgment motion, Will Payne argued that the agreement was enforceable. Payne also sought relief on the grounds of equitable estoppel, unjust enrichment, unclean hands, and a constructive trust. Will Payne cross-moved for summary judgment.

The trial court granted John and Sharie Ruegsegger's motion for summary judgment and denied Will Payne's cross motion for summary judgment. The trial court

5

reasoned that the sale document failed to include the essential elements of an enforceable real estate contract, the parties entered no contract because of a lack of a meeting of the minds, and the document, having no acceleration clause, did not require the Ruegseggers to make payments until 2023. Will Payne asked the trial court to reconsider its ruling and to grant him a remedy under the theories of equitable estoppel, unjust enrichment, and constructive trust. The trial court denied the request for reconsideration on the basis that Will Payne asserted no equitable claims in the complaint. The trial court granted the Ruegseggers' request for voluntary dismissal of their counterclaims without prejudice.

## LAW AND ANALYSIS

On appeal, Will Payne asks this court to reverse the summary judgment granted to John and Sharie Ruegsegger. This court reviews a trial court order granting summary judgment de novo. *Briggs v. Nova Servs.*, 166 Wn.2d 794, 801, 213 P.3d 910 (2009). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. CR 56(c). A material fact is one on which the outcome of the litigation depends in whole or in part. *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008); *Morris v. McNicol*, 83 Wn.2d 491, 494, 519 P.2d 7 (1974). In a summary judgment motion, the burden is on the moving party to demonstrate that there is no genuine issue as to a material fact and that, as a matter of

6

law, summary judgment is proper. *Hartley v. State*, 103 Wn.2d 768, 774, 698 P.2d 77 (1985). This court construes all facts and reasonable inferences in the light most favorable to the nonmoving party. *Barber v. Bankers Life & Cas. Co.*, 81 Wn.2d 140, 142, 500 P.2d 88 (1972); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

Although the subject of the lawsuit is a real estate contract for land in the State of Alaska, this court possesses jurisdiction over the subject matter. "[A]ctions involving personal interests in property, as opposed to actions adjudicating legal title to real property, need not be adjudicated in the state where the real property is located." *OneWest Bank, FSB v. Erickson*, 185 Wn.2d 43, 60, 367 P.3d 1063 (2016); *see Silver Surprize, Inc. v. Sunshine Mining Co.*, 74 Wn.2d 519, 525, 445 P.2d 334 (1968). When the action aims at the personal relations of parties in connection with a contract for sale of property beyond the jurisdiction, courts may afford relief. *Smith v. Fletcher*, 102 Wash. 218, 220, 173 P. 19 (1918). This court has subject matter jurisdiction in this case because the action determines the legal effect of the addendum agreement and its effects on Will Payne and the Ruegseggers' respective interests. Will Payne sought a money judgment, not relief concerning title to land.

One might expect Alaska law to control rights possessed under a contract to sell Alaska real property. Nevertheless, neither party forwards Alaska law nor seeks application of the Frontier State's jurisprudence. CR 9(k)(1) reads:

**(k) Foreign Law.**

7

> (1) *United States Jurisdictions.* A party who intends to raise an issue concerning the law of a state, territory, or other jurisdiction of the United States shall set forth in the party's pleading facts which show that the law of another United States jurisdiction may be applicable, or shall state in the party's pleading or serve other reasonable written notice that the law of another United States jurisdiction may be relied upon.

Even in civil cases when a foreign law is an essential element to the cause of action or defense, it must be pled and proved like any other fact. *State v. Collins*, 69 Wash. 268, 273, 124 P. 903 (1912). Therefore, we rely solely on Washington law.

### Essential Terms of Real Estate Sale Agreement

The trial court ruled that the contract between Will Payne, as seller, and John and Sharie Ruegsegger, as purchasers, was unenforceable for two reasons: the written document omits essential terms for a real estate contract and the parties never reached a meeting of the minds. The trial court ruled that Payne could not enforce the contract in the immediate future for a third reason: the contract contained no date for payments. We agree with the trial court that the contract lacked essential terms, and, therefore, we do not address either of the two alternative grounds for summary judgment.

A contract for the transfer of real property requires mutual assent as to all material terms or it is unenforceable. *Sea-Van Invs. Assocs. v. Hamilton*, 125 Wn.2d 120, 129, 881 P.2d 1035 (1994). Washington recognizes certain terms material to real property contracts:

> (a) time and manner for transferring title; (b) procedure for declaring forfeiture; (c) allocation of risk with respect to damage or destruction; (d)

8

insurance provisions; (e) responsibility for: (i) taxes, (ii) repairs, and (iii) water and utilities; (f) restrictions, if any, on: (i) capital improvements, (ii) liens, (iii) removal or replacement of personal property, and (iv) types of use; (g) time and place for monthly payments; and (h) indemnification provisions.

*Kruse v. Hemp*, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993) (citing *Hubbell v. Ward*, 40 Wn.2d 779, 782-83, 246 P.2d 468 (1952)).

A controlling decision is *Hubbell v. Ward*, 40 Wn.2d 779 (1952). In *Hubbell*, the plaintiff sought specific performance of an earnest money agreement for the sale of real property. The agreement provided:

> Total purchase price is Twenty-Nine Thousand and No/100 Dollars ($29.000.00), payable as follows: On evidence of merchantable title purchaser agrees to pay Nine Thousand ($9,000.00) Dollars down *and sign a contract for the balance*, payable at $200.00 or more per month, including interest at the rate of 5% on deferred balances.
> Purchase price is to include all furniture in rentals, excluding owner's apartment, also to include necessary tools and equipment, furnace parts and insulation to maintain premises. Owner shall furnish complete inventory of furnishings for buyer's inspection and approval before closing of sale.

*Hubbell v. Ward*, 40 Wn.2d at 780 (internal quotation marks omitted). After a bench trial, the trial court ordered the defendant "to enter into a real estate contract according to the terms of said earnest money receipt and agreement." *Hubbell v. Ward*, 40 Wn.2d at 780-81 (internal quotation marks omitted). The state Supreme Court reversed. The high court ruled that the original agreement lacked certainty because the agreement anticipated the preparation and execution of a future real estate purchase contract on which the minds

9

of the parties had not approved. Neither the agreement nor the trial court's decree provided the provisions that a real estate contract should contain. Therefore, the court refused specific enforcement of the contract. The court identified the thirteen subjects, listed above, to include in a real estate contract.

The agreement between Will Payne and John and Sharie Ruegsegger lacks many material terms. The singular page document omits the method of payment of principal or interest, payment of taxes, property insurance, liens on the property, payment for water or utilities, possession, escrow deposit, or even conveyance by deed.

Will Payne distinguishes *Hubbell v. Ward* because Rudd Hubbell sought specific performance, not money damages. In support of this argument, Payne advances *Hedges v. Hurd*, 47 Wn.2d 683, 289 P.2d 706 (1955). In *Hedges*, Mildred Hurd agreed to sell real property to the Hedges, and the parties signed an agreement. Hurd later received a better offer from a third party, but the Hedges refused to release Hurd from the agreement. The Hedges sued for money damages and the trial court found there was a valid contract and awarded $1,000 in damages. Our Supreme Court found the case distinguishable from *Hubbell* and affirmed. The court reasoned:

> As indicated above, the earnest-money receipt herein involved contained an adequate description of the property. It specified the total purchase price, the method of payment of principal and interest; provision was made for prorating taxes, insurance, and liens; for payment of water and other utilities, for possession, and for the deposit in escrow of the balance of the down payment by the purchasers, and a warranty deed by the seller. In view of what was said as to the earnest-money receipt in the

10

> *Hubbell* case, *supra*, we are convinced that the aforementioned things
> constitute and embrace all of the essential elements of a simple, binding
> contract for the sale of land, and that the earnest-money receipt or contract
> in the instant case was breached by the appellant in the instant case.

*Hedges v. Hurd*, 47 Wn.2d at 687.

*Hedges* does not support Will Payne's position. The real estate agreement in

*Hedges* was only enforceable because it included the essential elements of a binding

contract for the sale of land. Again, Will Payne's agreement to sell the Alaska property

lacks those necessary terms.

Will Payne argues that, even if the real estate agreement lacks essential terms for

enforceability, the parties intended to supplement the missing terms later. This intent,

according to Payne, renders the document enforceable.

The law recognizes three similar yet distinct varieties of agreements in which

parties intend to finalize terms later: agreements to agree, contracts to negotiate, and

agreements with open terms. *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171,

175-76, 94 P.3d 945 (2004). An agreement to agree is an agreement to do something that

requires a further meeting of the minds of the parties and without which it would not be

complete, and such agreements are unenforceable in Washington. *Keystone v. Xerox*, 152

Wn.2d at 175; *Sandeman v. Sayres*, 50 Wn.2d 539, 541-42, 314 P.2d 428 (1957). Thus,

categorizing the Alaska contract as an agreement to agree helps Payne none. In a

contract to negotiate, the parties exchange promises to conform to a specific course of

11

conduct during negotiations, such as negotiating in good faith, exclusively with each other, or for a specific period of time. *Keystone v. Xerox*, 152 Wn.2d at 176. Under an agreement with open terms, the parties intend to be bound by the key points agreed on with the remaining terms supplied by a court or another authoritative source, such as the Uniform Commercial Code. *Keystone v. Xerox*, 152 Wn.2d at 176.

No evidence supports a conclusion that the Alaska land agreement is a contract to negotiate or an agreement with open terms. None of the document terms reference subsequent negotiations. The document cannot be an agreement with open terms because the parties never agreed on key points and no independent or authoritative sources aided by supplementing an agreement to sell real property.

## Equitable Remedies

Will Payne contends that, even if he cannot legally enforce the real estate contract, the trial court should have granted him recovery based on equitable estoppel, unjust enrichment, constructive trust, or by using inherent judicial power to craft a remedy. John and Sharie Ruegsegger argue that Payne's claims for equitable remedies were properly dismissed because he did not plead them in his complaint, and he provided no meaningful argument supporting his request for equitable remedies. We agree with the Ruegseggers.

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." CR 8(a)(1). We construe pleadings liberally. *State v.*

12

*Adams*, 107 Wn.2d 611, 620, 732 P.2d 149 (1987). If a complaint states facts entitling the plaintiff to some relief, it is immaterial by what name the action is called. *State v. Adams*, 107 Wn.2d at 620. Initial pleadings that may be unclear may be clarified during the course of summary judgment proceedings. *State v. Adams*, 107 Wn.2d at 620. Nevertheless, a complaint should adequately alert the defendant of the claim's general nature. *Estate of Dormaier v. Columbia Basin Anesthesia*, 177 Wn. App. 828, 853-54, 313 P.3d 431 (2013). A complaint must give the opposing party "fair notice" of the nature of the plaintiff's claim. *Champagne v. Thurston County*, 163 Wn.2d 69, 84, 178 P.3d 936 (2008); *see Berge v. Gorton*, 88 Wn.2d 756, 762, 567 P.2d 187 (1977). The plaintiff must identify the legal theories on which the plaintiff seeks relief. *Estate of Dormaier*, 177 Wn. App. at 854. Insufficient pleadings are prejudicial to the opposing party. *Camp Fin., LLC v. Brazington*, 133 Wn. App. 156, 162, 135 P.3d 946 (2006).

Will Payne's "Complaint for Monies Owed" claimed the Ruegseggers owed a balance of $38,000, plus prejudgment interest. CP at 3, 5. The complaint contained sections titled jurisdiction, events, and damages, and concludes with a prayer for relief. Nevertheless, the complaint omitted a list of legal theories on which Payne sought relief. Although the complaint referenced the sale document, the pleading never mentioned any equitable claims. Payne's prayer for relief requested:

> 1. That judgment be entered against the Defendants individually and any marital community if applicable in the principal amount of $38,000.00 with prejudgment interest to the date of entry of judgment;

13

> 2. That the court award attorney fees and costs as permitted by law or contract;
> 3. For judgment for such other and further relief as the courts deems [sic] just and proper.

CP at 5. The complaint drops no hint at equitable remedies and omits any mention of estoppel, restitution, or constructive trust. Payne first mentioned equitable remedies in his cross motion for summary judgment where he argued equitable estoppel, unjust enrichment, and imposition of a constructive trust.

Will Payne's complaint's prayer for relief requests "judgment for such other and further relief as the courts deems [sic] just and proper." CP at 5. Nevertheless, this generic recitation fails to provide John and Sharie Ruegsegger with any notice of the nature of the "further relief." CP at 5. Even though a plaintiff may clarify initial pleadings during the course of summary judgment proceedings, Payne went beyond clarification and attempted to insert new claims and remedies in his cross motion for summary judgment. Payne could have asked but never attempted to amend his complaint to add the equitable claims.

Case law and treatises support our ruling that Will Payne could not assert equitable theories of relief in a summary judgment motion. The rule requiring estoppel to be pled applies not only when the estoppel is set up as a defense by the defendant but also when the plaintiff asserts estoppel as part of his or her cause of action or to preclude a defense. 28 AM. JUR. 2D *Estoppel and Waiver* § 150 (2016). Estoppel generally is

14

unavailable to a party who fails to plead it. 28 AM. JUR. 2D *Estoppel and Waiver* § 151 (2016). In an ancient decision, the Washington Supreme Court refused a plaintiff recovery under estoppel when he never pled estoppel. *Jacobs v. First Nat'l Bank of Puyallup*, 15 Wash. 358, 46 P. 396 (1896).

To recover for unjust enrichment or restitution the plaintiff must plead unjust retaining of benefits and why an equitable remedy is necessary. *Hughes v. Chattem, Inc.*, 818 F. Supp. 2d 1112, 1124-25 (S.D. Ind. 2011). Stated differently, the plaintiff must allege that she performed or otherwise conferred a benefit on the defendants under a contractual or quasi-contractual relationship with the expectation of renumeration. *Prima v. Darden Restaurants, Inc.*, 78 F. Supp. 2d 337, 355 (D.N.J. 2000). A plaintiff must allege in a complaint or petition all of the material facts that constitute the gist of a cause of action for restitution. 66 AM. JUR. 2D *Restitution and Implied Contracts* § 159 (2016). Merely labeling a claim for money damages is insufficient. 66 AM. JUR. 2D *Restitution and Implied Contracts* § 159 (2016).

A party claiming entitlement to a constructive trust must allege in the complaint the following: (1) a confidential or fiduciary relationship, (2) a promise, express or implied, (3) a transfer made in reliance on that promise, and (4) unjust enrichment. *In re Koreag, Controle et Revision, S.A. v. Refco F/X Assoc., Inc.*, 961 F.2d 341, 352 (2d Cir. 1992); *In re Ticketplanet.com*, 313 B.R. 46, 68 (Bankr. S.D.N.Y. 2004); *Abele v. Sawyer*, 747 So. 2d 415, 416 (Fla. Dist. Ct. App. 1999). A constructive trust will not be imposed

15

unless the complaint makes specific allegations of wrongdoing, such as fraud, breach of fiduciary duty, duress, coercion, or mistake and the complaint identifies specific, identifiable property to which the defendant has title. 76 AM. JUR. 2D *Trusts* § 624 (2016). A general claim for money damages will not give rise to a constructive trust. 76 AM. JUR. 2D *Trusts* § 624 (2016).

In *Kirby v. City of Tacoma*, 124 Wn. App. 454, 98 P.3d 827 (2004), Joseph Kirby sued the city of Tacoma for harassment and discrimination during his employment with the Tacoma Police Department. He amended his complaint by adding intentional infliction of emotional distress as a cause of action. He also filed a municipal notice of claim indicating his intent to assert "constitutional tort claims." *Kirby v. City of Tacoma*, 124 Wn. App. at 462. Tacoma moved for partial summary judgment and Kirby raised a First Amendment claim in his memorandum in opposition to the motion for summary judgment. The trial court granted Tacoma's motion for partial summary judgment on Kirby's claims and dismissed Kirby's First Amendment claim on the basis that Kirby failed to properly plead a First Amendment claim.

On appeal, this court, in *Kirby v. City of Tacoma*, affirmed summary judgment for Tacoma. The court held that Kirby's pre-suit tort claim failed to provide the city adequate notice of the nature of the claims against which it would have to defend. This court reasoned that a claim for "constitutional tort claims" without reference to "free speech" or "First Amendment" is insufficient because the "variation among potential

16

constitutional tort claims is significant." *Kirby v. City of Tacoma*, 124 Wn. App. at 470. This variation presented myriad ways of proceeding with a defense and conducting discovery, resulting in actual prejudice to the city. *Kirby v. City of Tacoma*, 124 Wn. App. at 470.

The dissent writes that the record establishes that the trial court decided the equitable theories. Nevertheless, the record confirms that the trial court did not address the merits of the theories. In the order denying reconsideration, the trial court expressly ruled that "plaintiff did not make any equitable claims in the complaint." CP at 228.

We hold that Will Payne failed to provide John and Sharie Ruegsegger with adequate notice of any equitable claims or remedies. Payne first mentioned claims for equitable relief in his cross motion for summary judgment. In *Kirby*, the plaintiff amended his complaint and referenced constitutional tort claims. Will Payne never sought to amend his complaint. The trial court properly dismissed Payne's equitable claims because he failed to plead them under CR 8(a).

## Motion for Reconsideration

Will Payne contends the trial court should have granted his motion for reconsideration because of irregularities in the proceedings, surprise, error of law occurring at the trial, and that substantial justice had not been done. We decline to address this assignment of error because Payne has not complied with RAP 10.3.

17

RAP 10.3(a)(6) provides that an appellate brief should contain "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." Assignments of error not argued or further referred to in a brief or orally are treated as abandoned by an appellant. *Talps v. Arreola*, 83 Wn.2d 655, 657, 521 P.2d 206 (1974).

CR 59(a) lists nine grounds for a trial court to reconsider its decision. Before the trial court, Will Payne sought reconsideration on four grounds:

> (1) Irregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion, by which such party was prevented from having a fair trial;
> . . . .
> (3) Accident or surprise which ordinary prudence could not have guarded against;
> . . . .
> (8) Error in law occurring at the trial and objected to at the time by the party making the application; or
> (9) That substantial justice has not been done.

CR 59(a); see also CP at 211-12. On appeal, Payne omits any reasoned argument to support reconsideration under any of the CR 59(a) factors. Instead of identifying any irregularity in the proceedings or source of accident or surprise, Payne reiterates his belief that the trial court should have considered equitable remedies or, at the minimum, granted the right to recovery of possession and title to said real estate.

## CONCLUSION

We affirm the trial court's dismissal of Will Payne's suit on summary judgment.

18

No. 33537-2-III
*Payne v. Ruegsegger*


A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, C.J.

I CONCUR:

_____
Korsmo, J.

19

33537-2-III

LAWRENCE-BERREY, J. (dissenting) — The majority affirms the summary

judgment dismissal, in part, by refusing to consider the equitable theories argued to and

decided by the trial court. Because formal pleading requirements may be waived by the

parties and the trial court, I dissent.

In response to John "Stacy" and Sharie Kay Ruegseggers' summary judgment

motion and assertion that the real estate agreement was unenforceable, Will Payne raised

equitable defenses, including unjust enrichment. The record reflects genuine issues of

material fact as to whether the Ruegseggers would be unjustly enriched: Mr. Payne

deeded the property to the Ruegseggers, and the Ruegseggers later refused to pay the

agreed value.

The record establishes that this and other equitable theories were argued by the

parties and decided by the trial court. In their response to Mr. Payne's motion for

reconsideration, the Ruegseggers note:

> But the fact is the Court reviewed all of the documents submitted by
> the parties, *including [Mr. Payne's] Memorandum in Opposition.* The
> Court also heard arguments from both counsel on the equitable issues
> raised by [Mr. Payne]. After considering all the pleadings and the
> arguments, the Court made an oral ruling that [Mr. Payne's] equitable
> arguments were denied.

Clerk's Papers at 217.

When reviewing a trial court's summary judgment order, we review even unpleaded issues argued to and decided by the trial court. *Landstar Inway, Inc. v. Samrow*, 181 Wn. App. 109, 121-22, 325 P.3d 327 (2014). Because the majority focuses its review of the summary judgment order on the pleadings rather than on the issues argued to and decided by the trial court, I dissent.

_____
Lawrence-Berrey, J.