IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DEBORAH HOLLIS, | ) | No. 78034-4-I |
| Appellant, | ) ) | DIVISION ONE |
| v. | ) ) | |
| SNOHOMISH COUNTY MEDICAL EXAMINER'S OFFICE, | ) ) | UNPUBLISHED OPINION |
| Respondent. | ) ) | FILED: May 20, 2019 |

SMITH, J. — Deborah Hollis appeals the summary judgment dismissal of her claims against her former employer, the Snohomish County Medical Examiner's Office (SCMEO), for retaliation, disability discrimination, and failure to accommodate her disabilities. Hollis did not meet her burden to present evidence raising a genuine issue of material fact as to whether she suffered an adverse employment action, a required element of retaliation. Additionally, Hollis did not give SCMEO notice of her disability discrimination or failure-to-accommodate claims before filing this lawsuit, as required by RCW 4.96.020. The remedy for failure to provide notice before filing a lawsuit is usually dismissal without prejudice if notice can still be given within the statute of limitations, as is the case here. However, we hold that even if Hollis had given SCMEO timely notice of her disability discrimination and failure to accommodate claims, those claims fail on alternate bases. For these reasons, we affirm.

## FACTS

In 2006, SCMEO hired Hollis as a medical investigator II. In 2013, Hollis testified in a discrimination lawsuit by a coworker that led to the resignation of her supervisor, Dr. Norman Thiersch. In December 2013, Hollis also filed her own discrimination lawsuit against SCMEO and Dr. Thiersch, which settled in October 2014 and was dismissed.

Hollis suffers from diabetes. In December 2013, the same month she filed her lawsuit against SCMEO, Hollis requested a workplace accommodation for her diabetes and met with Heather Oie, SCMEO's operations manager. Hollis asked Oie for new boots, a refrigerator to keep her lunch in, and the ability to take breaks as necessary. The day after the meeting, Hollis purchased the boots on SCMEO's credit card and Dr. Thiersch purchased a personal refrigerator for Hollis's work space. Oie advised Hollis that she could take breaks to manage her condition at any time and asked Hollis to notify her if she had any trouble taking those breaks. After this initial meeting, Hollis never contacted Oie to inform her that there were any issues with the accommodations.

In August 2015, Hollis complained to Dr. Daniel Selove, the chief medical examiner hired in 2015, that she was not able to take her lunch breaks. Dr. Selove advised Hollis that she should take her lunch breaks and to notify her lead immediately if she needed assistance in doing so. Dr. Selove also advised Hollis that she could take an additional snack or meal break later in the day, and he offered to schedule a meal period for her to ensure that she would be able to

2

eat. Dr. Selove told Hollis to contact Oie if she had any issues with her breaks. Hollis did not inform Oie or Dr. Selove of any further issues taking breaks.

In August 2016, Hollis suffered a workplace injury to her finger and rotator cuff while transporting a decedent. Hollis was restricted from pushing, pulling, or lifting anything over five pounds. SCMEO assigned her light-duty work drafting sections of its policy manual. While on light-duty assignment, Hollis interviewed for a deputy coroner position with the Skagit County Coroner's Office. On November 3, 2016, Skagit County informed Hollis that it had selected her for the position and asked her to authorize a background check. On November 4, 2016, SCMEO notified Hollis that there was no additional light-duty work and that it would place her on administrative leave. Hollis tendered her resignation the same day. On November 8, 2016, Hollis was released to perform her job without restrictions. The next day, Dr. Selove informed Hollis that she could return to work on her regular schedule. Hollis declined and began working for Skagit County on November 16, 2016.

In March 2017, Hollis filed this lawsuit against SCMEO. She alleged claims for retaliation, a hostile work environment,[1] disability discrimination, and failure to provide a reasonable accommodation. Specifically, Hollis alleged that coworkers loyal to Dr. Thiersch "engaged in behavior to ostracize or defame" her, subjected her to a hostile work environment, and told new employees not to associate with her because she was "'paranoid' and would likely sue them." She

---

[1] At the trial court, Hollis conceded that her hostile work environment claim is a subpart of the retaliation claim. Therefore, we address that claim as part of the retaliation analysis.

also alleged that she received a less-than-satisfactory performance evaluation, that SCMEO limited her light-duty work after her workplace injury, and that she constructively discharged herself "[a]s a result of this discriminatory and retaliatory act and the on-going and unremedied hostile work environment."

SCMEO moved for summary judgment on all claims. The trial court determined that Hollis presented only conclusory statements to support her claims, that there was no evidence of a nexus between her discrimination lawsuit and subsequent treatment, and that summary dismissal was proper for all claims. Hollis appeals.

## ANALYSIS

### *Retaliation*

Hollis argues that the trial court improperly dismissed her retaliation claim because she established a prima facia case of retaliation. Because Hollis has not presented evidence that raises a genuine issue of material fact as to whether she experienced an adverse employment action, we disagree.

This court reviews summary judgment orders de novo. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). "[S]ummary judgment is appropriate where there is 'no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012) (second alteration in original) (quoting CR 56(c)). Although the evidence is viewed in the light most favorable to the nonmoving party, if that party is the plaintiff and she fails to make a factual showing sufficient to establish an element essential to her case, summary

judgment is warranted. <u>Young v. Key Pharm., Inc.</u>, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). Once the moving party shows there are no genuine issues of material fact, the nonmoving party must bring forth specific facts to rebut the moving party's contentions. <u>Elcon Constr.</u>, 174 Wn.2d at 169. "[M]ere allegations, denials, opinions, or conclusory statements" do not establish a genuine issue of material fact. <u>Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 122 Wn. App. 736, 744, 87 P.3d 774 (2004).

The Washington Law Against Discrimination, chapter 49.60 RCW, "prohibits employers from retaliating against employees who oppose discriminatory practices." <u>Cornwell v. Microsoft Corp.</u>, 192 Wn.2d 403, 411, 430 P.3d 229 (2018) (quoting RCW 49.60.210(1)). To establish a prima facie case of retaliation, Hollis must show that (1) she engaged in a statutorily protected activity, (2) SCMEO took an adverse employment action against her, and (3) there is a causal link between the activity and the adverse action. <u>Alonso v. Qwest Commc'ns Co.</u>, 178 Wn. App. 734, 753-54, 315 P.3d 610 (2013). Because chapter 49.60 RCW substantially parallels Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, federal discrimination cases are persuasive. <u>Antonius v. King County</u>, 153 Wn.2d 256, 266, 103 P.3d 729 (2004).

It is uncontested that Hollis engaged in a statutorily protected activity when she filed her discrimination lawsuit against SCMEO in 2013. But, Hollis fails to establish a prima facie case of retaliation because she does not present evidence raising a genuine issue of material fact as to whether she suffered an adverse employment action.

"'An actionable adverse employment action must involve a change in employment conditions that is more than an inconvenience or alteration of job responsibilities, such as reducing an employee's workload and pay.'" Tyner v. State, 137 Wn. App. 545, 564-65, 154 P.3d 920 (2007) (internal quotation marks omitted) (quoting Kirby v. City of Tacoma, 124 Wn. App. 454, 465, 98 P.3d 827 (2004)). "It includes a demotion or adverse transfer, or a hostile work environment." Boyd v. Dep't of Soc. & Health Servs., 187 Wn. App. 1, 13, 349 P.3d 864 (2015). Whether an action "'is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position.'" Tyner, 137 Wn. App. at 565 (internal quotation marks omitted) (quoting Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 126 S. Ct. 2405, 2417, 165 L. Ed. 2d 345 (2006)).

Hollis argues that she presented evidence of several different adverse employment actions. We disagree.

First, Hollis argues that management monitored her use of SCMEO's showers and bathrooms to show that she was misusing work time. As evidence of this, Hollis cites to exhibit C to her response to SCMEO's motion for summary judgment. This document is not legible, and Hollis does not explain what it contains. SCMEO states that exhibit C documents that an employee complained that Hollis was showering after the start of her 6:00 a.m. shift, that Oie called Hollis at 6:20 a.m. one morning and a coworker said she was showering, and that Oie and Dr. Selove decided that Dr. Selove would remind Hollis to be ready to work at the start of her shift. Hollis does not refute SCMEO's description of the

exhibit. As described, it is not evidence of an adverse employment action because actions that are disciplinary or investigatory in nature are not adverse employment actions. Kirby, 124 Wn. App. at 465. Furthermore, Hollis points to nothing in the record that raises an issue of fact as to whether management's actions otherwise resulted in a change in her employment conditions. Therefore, Hollis did not meet her burden to show that management's response to her use of the showers during work was an adverse employment action.

Second, Hollis cites a negative performance evaluation as evidence of an adverse employment action. In that evaluation, Hollis was rated "Does Not Consistently Meet Expectations" for the "Partnership" criteria. Hollis argues that this evaluation inconsistently applied expectations because it both praised her manner with some individuals and criticized her communication with other individuals. But in her briefing on summary judgment, Hollis admitted that this evaluation was not final. An undeserved and negative performance evaluation can be an adverse employment action, but there is no adverse employment action if the evaluation is subject to modification by the employer. Brooks v. City of San Mateo, 229 F.3d 917, 929-30 (9th Cir. 2000). Therefore, because the evaluation was not final, Hollis did not meet her burden to show that the negative evaluation was an adverse employment action.

Third, Hollis argues that management restricted her opportunities to train new medical investigators and that such restriction was an adverse employment action. She cites to an email in which she complained to Dr. Selove that a new employee was receiving training in the autopsy department rather than with her

in the investigations department, and that she should be able to train because of her seniority. But Dr. Selove's response indicated that the new employee would train in the investigations department after his training in autopsy was complete. Dr. Selove did not state that Hollis could not train the new employee. Therefore, this email does not raise a genuine issue of material fact that Dr. Selove denied Hollis any training opportunities.

Finally, Hollis argues that she was subjected to an adverse employment action in the form of a hostile work environment. To demonstrate a hostile work environment, Hollis must establish that she suffered harassment that was unwelcome and that the harassment affected the terms and conditions of her employment, occurred because Hollis is a member of a protected class, and was imputable to SCMEO. Loeffelholz v. Univ. of Wash., 175 Wn.2d 264, 275, 285 P.3d 854 (2012). Here, Hollis alleges that other employees and management ridiculed and tormented her based on her diabetes and subjected her to undesirable and offensive conduct that compounded the difficulty of managing her diabetes. At oral argument, Hollis alleged that Dr. Selove failed to stop other employees from harassing her as a way of retaliating against her for her participation in the 2013 lawsuits. She contends that she has raised an issue of fact as to whether she was harassed based on the behavior of her coworkers that she described in her declaration. Again, we disagree.

"Though the trial court may be lenient to a nonmoving party's affidavits presented in response to a motion for summary judgment, it may not consider conclusory statements contained in the nonmoving party's affidavits." Baldwin v.

Silver, 165 Wn. App. 463, 471, 269 P.3d 284 (2011). A fact "is what took place, an act, an incident, a reality as distinguished from supposition or opinion . . . [and u]ltimate facts or conclusions of fact are insufficient." Grimwood v. Univ. of Puget Sound, Inc., 110 Wn.2d 355, 359, 753 P.2d 517 (1988), abrogated on other grounds by Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas County, 189 Wn.2d 516, 527, 404 P.3d 464 (2017). "A nonmoving party cannot defeat a motion for summary judgment with conclusory statements of fact." Baldwin, 165 Wn. App. at 471.

Here, Hollis's declaration stated that she has diabetes and must eat meals at times that correlate to her medications and blood sugar and that she needs to use the bathroom more frequently and for prolonged periods of time. Hollis explained that she "was ridiculed for requesting breaks and accused of attempting to take control of the schedule" and "faced the intolerable choice of avoiding censure and ridicule and maintaining healthy blood sugar levels." Hollis also stated that she "began looking for other work because the environment had become so hostile" and she "faced daily battles in merely being able to do [her] job, [n]ot to mention the constant stream of unfounded complaints from co-workers that management indulged and investigated." These statements are conclusory because they do not include any detail about the specific acts of harassment Hollis suffered. Therefore, they do not raise an issue of fact as to whether she suffered harassment, a required element of a hostile work environment.

Because Hollis did not present evidence that raises a genuine issue of material fact as to whether she suffered any adverse employment action, summary dismissal of her retaliation claim was proper.

Hollis argues that SCMEO's actions need not affect the terms and conditions of her employment to be adverse employment actions. In support of this proposition, she cites Tyner. But Tyner states that "'[a]n actionable adverse employment action must involve a *change in employment conditions* that is more than an inconvenience or alteration of job responsibilities, such as reducing an employee's workload and pay.'" Tyner, 137 Wn. App. at 564-65 (emphasis added) (internal quotation marks omitted) (quoting Kirby, 124 Wn. App. at 465). Hollis also cites Boyd for the proposition that an employment action is adverse merely if it would dissuade a reasonable employee from making a charge of discrimination. Boyd does state that an "employee must show that a reasonable employee would have found the challenged action materially adverse, meaning that it would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Boyd, 187 Wn. App. at 13 (internal quotation marks omitted) (quoting Burlington N., 548 U.S. at 68). But it also acknowledges that "[a]n adverse employment action involves a change in employment that is more than an inconvenience or alteration of one's job responsibilities." Boyd, 187 Wn. App. at 13. Neither Tyner nor Boyd stands for the proposition that Hollis can establish an adverse employment action without a change in employment conditions.

Hollis also argues that Burlington Northern, a 2006 United States Supreme Court decision, held that an adverse employment action is anything that discourages an employee from bringing a claim for retaliation. It does not. In that case, the Court held that to constitute an adverse employment action, an employer's conduct must be "materially adverse to a reasonable employee," meaning that "the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge" of unlawful conduct by the employer. Burlington N., 548 U.S. at 57. But this standard is still one of "*material* adversity" that does not include "trivial harms," and the reaction must be that of a "*reasonable* employee." Burlington N., 548 U.S. at 68. "[P]etty slights, minor annoyances, and simple lack of good manners will not create such deterrence." Burlington N., 548 U.S. at 68. Under the evidence presented, Hollis does not establish that she suffered a material adversity.

For the first time in her reply brief, Hollis argues that Reed v. Kindercare Learning Centers LLC, No. C15-5634BHS, 2016 WL 7231454 (W.D. Wash. Dec. 14, 2016) (court order), requires reversal. We decline to address this case because we need not address cases cited for the first time in a reply brief. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Hollis next argues, also for the first time in her reply brief, that she was subject to additional adverse employment actions, including different treatment in the availability of light-duty work, the refusal to permit her to work, and Dr.

11

Selove's email publicizing her training complaints to the staff. But "[a] reply brief should . . . be limited to a response to the issues in the brief to which the reply brief is directed." RAP 10.3(c). Therefore, we decline to consider these additional alleged adverse employment actions. See State v. Hudson, 124 Wn.2d 107, 120, 874 P.2d 160 (1994) (raising an issue for the first time in a reply brief unfairly deprives the respondent of an opportunity to respond and presents the court with an issue that has not been fully developed).

Finally, Hollis argues that declarations from Ethan Greggerson, Hayley Thompson, and herself create a genuine issue of material fact as to whether there is a causal link between her protected activity of filing the 2013 lawsuit and her alleged adverse employment actions. "An employee proves causation 'by showing that retaliation was a substantial factor motivating the adverse employment decision.'" Cornwell, 192 Wn.2d at 412 (quoting Allison v. Hous. Auth., 118 Wn.2d 79, 96, 821 P.2d 34 (1991). We agree that Greggerson's declaration presents a genuine issue of material fact that retaliation was a substantial factor in the alleged adverse employment actions. Greggerson's declaration states, "When I began my employment as a trainee with SCMEO, I was told by staff and supervisors that I should stay clear of Deborah Hollis, saying that she had filed lawsuits against the County and was 'paranoid' and 'untrustworthy.'" This statement, taken in the light most favorable to Hollis, is evidence that the alleged adverse employment actions were based on her discrimination lawsuit. But because Hollis did not present evidence that raises a genuine issue of material fact as to whether she suffered an adverse

12

employment action, evidence of a causal link to those alleged adverse employment actions does not change the ultimate result and summary judgment was proper.

*Failure To Accommodate and Disability Discrimination*

Hollis argues that the trial court improperly dismissed her disability discrimination and reasonable accommodation claims. We disagree.

As an initial matter, we note Hollis did not give SCMEO proper notice of these claims. RCW 4.96.020(2) requires that "[a]ll claims for damages against a local governmental entity . . . shall be presented to the agent within the applicable period of limitations within which an action must be commenced." Furthermore, "[n]o action subject to the claim filing requirements of this section shall be commenced against any local governmental entity . . . for damages arising out of tortious conduct until sixty calendar days have elapsed after the claim has first been presented to the agent of the governing body thereof." RCW 4.96.020(4).

"The purpose of claim filing statutes is to 'allow government entities time to investigate, evaluate, and settle claims.'" Lee v. Metro Parks Tacoma, 183 Wn. App. 961, 968, 335 P.3d 1014 (2014) (quoting Medina v. Pub. Util. Dist. No. 1 of Benton County, 147 Wn.2d 303, 310, 53 P.3d 993 (2002)). "Allowing time for investigation and evaluation also provides an opportunity for governmental entities to assess the potential costs and benefits of litigation." Lee, 183 Wn. App. at 968. "Washington case law requires strict compliance with the filing procedures." Hintz v. Kitsap County, 92 Wn. App. 10, 14, 960 P.2d 946 (1998).

"The proper remedy for failure to comply with a notice of claim statute is dismissal of the suit." Hintz, 92 Wn. App. at 14. Dismissal without prejudice is proper when the statute of limitations on a claim has not yet expired. See Hintz, 92 Wn. App. at 12 (noting that wrongful discrimination claim previously dismissed without prejudice where statute of limitations had not yet expired).

Here, the claim signed by Hollis on September 27, 2016, describes retaliatory behavior by county management and staff but does not allege that SCMEO discriminated against her based on any disability or failed to reasonably accommodate her disabilities. Therefore, Hollis did not meet her burden to show that she gave SCMEO notice of her disability discrimination or failure-to-accommodate claims.

But, the statute of limitations on Hollis's claims has not yet expired. As a result, one remedy is dismissal without prejudice, which would allow Hollis time to comply with the claim filing statute. However, as described below, Hollis did not raise a genuine issue of material fact that SCMEO failed to accommodate her disability. And she waived her argument that dismissal of the disability discrimination claim was improper because she did not address it in her opening brief on appeal. Therefore, we hold that dismissal without prejudice is unnecessary and summary judgment on those claims is warranted.

First, Hollis did not establish a prima facie case that SCMEO failed to reasonably accommodate her disabilities. To do so, Hollis must show that she has a disability that substantially limited her ability to perform the job, she was qualified to perform the essential functions of the job, she gave SCMEO notice of

the disability and its accompanying substantial limitations, and upon notice, SCMEO failed to adopt measures that were available and medically necessary to accommodate the disability. Davis v. Microsoft Corp., 149 Wn.2d 521, 532, 70 P.3d 126 (2003).

It is undisputed that Hollis had two disabilities (her diabetes and her workplace injury to her rotator cuff and finger) and that she gave SCMEO notice of these disabilities and their limitations. But Hollis presented no evidence that raises a genuine issue of material fact as to whether SCMEO failed to accommodate those disabilities.

Hollis argues that she provided evidence that she was ridiculed for requesting breaks, accused of attempting to take control of the schedule, and monitored in the bathroom. These allegations all relate to Hollis's ability to take breaks. But the record shows that after her complaints in 2013 and 2015, Oie and Dr. Selove, respectfully, told Hollis that she should take breaks as necessary to manage her diabetes and let them know if she had any problems doing so. Hollis does not point to any evidence in the record that after those accommodations were made, she told Oie or Dr. Selove that the accommodations were not working because she was not able to take her breaks or that she needed alternative accommodations. Because Hollis did not communicate to SCMEO that the accommodations it provided were not working, she has not raised a genuine issue of material fact that it failed to accommodate her diabetes. See Frisino v. Seattle Sch. Dist. No. 1, 160 Wn. App. 765, 783, 249 P.3d 1044 (2011) (Because an employer "must be able to ascertain whether

its efforts at accommodation have been effective," an employee "has a duty to communicate to the employer whether the accommodation was effective.").

Hollis also argues that there is an issue of fact as to whether SCMEO failed to reasonably accommodate her workplace injury. Specifically, Hollis argues that despite a restriction that she not lift or push anything over five pounds with her right arm, she could still lift and transport bodies with the assistance of other first responders or apparatuses.

But "Washington law is well settled that to prove a claim for failure to accommodate, a plaintiff must demonstrate that he or she can perform the essential functions of the job as determined and applied by the employer—not that the employer could revamp the essential functions of a job to fit the employee." Fey v. State, 174 Wn. App. 435, 452, 300 P.3d 435 (2013). "[A]n employer's duty to reasonably accommodate a disabled worker does not require the employer 'to alter the fundamental nature of the job, or to eliminate or reassign essential job functions.'" Fey, 174 Wn. App. at 452 (quoting Pulcino v. Fed'l Express Corp., 141 Wn.2d 629, 644, 9 P.3d 787 (2000), overruled in part on other grounds by McClarty v. Totem Elec., 157 Wn.2d 214, 137 P.3d 844 (2006)).

Here, the record includes a description of the essential tasks for medical investigators, which states that Hollis must be able to lift and carry "in excess of 100# . . . while removing larger bodies from scene," "lift in excess of 100# while moving deceased bodies" and pull "in excess of l00 # of initial force to remove gurney from truck." SCMEO was not required to eliminate these essential tasks

16

or reassign them to other first responders at a scene. Furthermore, the essential task description does not describe any apparatuses that would allow an employee with a five-pound restriction on lifting and pushing to perform these essential tasks alone. Therefore, Hollis did not raise an issue of fact that she was able to perform the job's essential tasks with an accommodation. Summary judgment was proper.

Second, Hollis waived any argument that her disability discrimination claim was improperly dismissed because she raised it for the first time in her reply brief. Cowiche Canyon, 118 Wn.2d at 809. Although Hollis argues that she provided circumstantial evidence of her disability discrimination claim in her opening brief, the portion of the opening brief cited is part of the retaliation argument and does not address disability discrimination. Therefore, this argument fails.

For the reasons described above, we affirm the summary judgment dismissal of Hollis's claims.

WE CONCUR: