# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| NOUHOUM SIDIBE, an individual, | No. 53484-3-II |
| Appellant, | |
| v. | |
| PIERCE COUNTY, a political subdivision of the State of Washington, | UNPUBLISHED OPINION |
| Respondent. | |

MELNICK, J. —Nouhoum Sidibe appeals the superior court's order granting Pierce County's CR 12(c) partial motion for judgment on the pleadings. Sidibe claimed racial discrimination based on disparate treatment, and argues that the court erred when it determined that an internal affairs investigation did not constitute an adverse employment action. Because Sidibe can prove a set of facts consistent with the complaint that would entitle him to relief, we reverse.

## FACTS

Sidibe is a Black American male who is originally from Mali, West Africa. In 2014, the Pierce County Sheriff's Department hired Sidibe as a corrections deputy.

On March 13, 2018, Sidibe attended an annual firearms certification training at the Pierce County Sheriff's Department Shooting Range. Sidibe was the only Black person present at the range that day. Prior to beginning training, the range instructors directed all persons shooting to pick up their bullet casings after each round. Sidibe passed his certification that morning with a 92 percent, the highest score on the range that day. Around 12:30 p.m., before taking a break for

lunch, Sidibe informed the range instructor, Corrections Deputy Robert Miller, that many of the deputies had failed to pick up their bullet casings.

After returning from lunch, Sidibe resumed firearms training. Around 2:30 p.m., Sidibe was informed that Miller had detected the smell of alcohol on his breath. After being escorted off the range in front of his peers, Sidibe received orders to submit to two portable breath tests. Both of the portable breath tests returned results of 0.0. Sidibe then received directions to place his gun in his vehicle. A deputy then drove Sidibe to a precinct where he took a breathalyzer test, which returned a result of 0.0. Sidibe was told that refusal to submit to these tests would result in disciplinary action for insubordination.

Two internal affairs (IA) investigators, Detectives Teresa Berg and Timothy Donlin, interviewed Sidibe regarding his alcohol usage and off-duty activities in the hours before the firearms training.

Following the incident at the range, Sidibe's colleagues ridiculed him about the events at the range and about the ensuing investigation. These comments upset Sidibe, and he took time off and switched from day to evening shift to avoid them.

On May 8, IA issued an investigative report regarding the events of March 13. A week later, Sidibe submitted a written statement contesting several portions of the investigative report. The next week, Berg and Donlin conducted a second interview with Sidibe, questioning him regarding his rebuttal statement. During the interview, Sidibe shared his concern that the allegations would disrupt his promotion to patrol deputy.

Despite finding no wrongdoing, IA opened a formal investigation. That investigation will remain on Sidibe's personnel record, regardless of the result.

On September 10, Sidibe filed a suit against Pierce County under the Washington Law Against Discrimination (WLAD), claiming race discrimination based on disparate treatment relating to the IA investigation. On February 5, 2019, Sidibe amended his complaint to add a claim of retaliation.

On March 12, Pierce County filed a partial motion for judgment on the pleadings under CR 12(c), arguing that Sidibe's disparate treatment claim could not succeed as a matter of law.

On March 22, Sidibe again amended his complaint to add claims of hostile work environment, harassment, and discrimination based on race and national origin.

On March 29, the court held a hearing on Pierce County's partial motion for judgment on the pleadings. The court granted Pierce County's motion and dismissed the disparate treatment claim relating to the IA investigation.

On April 22, the court granted Sidibe's stipulated motion to dismiss his remaining claims.[1]

This timely appeal follows.

## ANALYSIS

The sole issue in this appeal is Sidibe's argument that the trial court erred when it determined that the internal investigation, even if racially motivated, could not constitute an adverse employment action. We agree with Sidibe.

I.     STANDARD OF REVIEW

CR 12(c) states, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." We review an order of dismissal under CR 12(c) de novo, engaging in the same inquiry as the trial court. *P.E. Sys., LLC v. CPI Corp.*,

---

[1] After the dismissal, Sidibe then amended his complaint to substitute Pierce County as the defendant.

176 Wn.2d 198, 203, 289 P.3d 638 (2012). "We examine the pleadings 'to determine whether the claimant can prove any set of facts, consistent with the complaint, that would entitle the claimant to relief.'" *Fedway Marketplace W., LLC v. State*, 183 Wn. App. 860, 868, 336 P.3d 615 (2014) (quoting *Parrilla v. King County*, 138 Wn. App. 427, 431, 157 P.3d 879 (2007)). When reviewing a CR 12(c) motion, we presume that the allegations asserted in the complaint are true. *Fedway Marketplace W.*, 183 Wn. App. at 868. A court considers the facts alleged in the complaint and hypothetical facts in the light most favorable to the nonmoving party. *Postema v. Pollution Control Hr'gs Bd.*, 142 Wn.2d 68, 122-23, 11 P.3d 726 (2000).

A CR 12(c) motion for judgment on the pleadings is treated the same as a CR 12(b)(6) motion to dismiss for failure to state a claim. *P.E. Sys.*, 176 Wn.2d at 203. Like a CR 12(b)(6) motion, the purpose of a CR 12(c) motion is to determine if a plaintiff can prove any set of facts that would justify relief. *P.E. Sys.*, 176 Wn.2d at 203.

II.    ADVERSE EMPLOYMENT ACTION

"Since 1949, the WLAD has existed to protect individuals from discrimination on the basis of race, among other protected characteristics." *Blackburn v. Dep't of Soc. & Health Servs*., 186 Wn.2d 250, 257, 375 P.3d 1076 (2016). To help accomplish its antidiscrimination purposes, the WLAD is to be "'construed liberally.'" *Blackburn*, 186 Wn.2d at 257 (quoting RCW 49.60.020)).

At the federal level, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, contains antidiscrimination provisions with similar statutory language. Although this case only involves claims brought under the WLAD, Washington courts often look to federal case law on Title VII for guidance in interpreting the WLAD. *Blackburn*, 186 Wn.2d at 257-58. Title VII cases, however, are "a source of guidance," and "not binding," which leaves Washington courts "free to adopt those theories and rationale which best further the purposes and mandates of [WLAD]."

*Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 361-62, 753 P.2d 517 (1988), *overruled on other grounds by Mikkelsen v. Pub. Utility Dist. No. 1 of Kittitas County*, 189 Wn.2d 516, 404 P.3d 464 (2017).

The WLAD prohibits any employer from "discriminat[ing] against any person in compensation or in other terms or conditions of employment because of . . . race." RCW 49.60.180(3). Here, Sidibe alleges claims of disparate treatment under RCW 49.60.180(3).

""""Disparate treatment" . . . is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin.'" *Shannon v. Pay 'N Save Corp.*, 104 Wn.2d 722, 726, 709 P.2d 799 (1985) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977)), *abrogated on other grounds by Blair v. Wash. State Univ.*, 108 Wn.2d 558, 740 P.2d 1379 (1987).

To prove a claim of discrimination based on disparate treatment, the claiming employee must prove four elements: (1) that he belongs to a statutorily protected class; (2) that he was discharged or subjected to an adverse employment action; and (3) that he was performing satisfactory work. *Mikkelsen*, 189 Wn.2d at 527-32. In this case, only the second element is at issue, but the failure to prove even one element is fatal to the claim. *Kirby v. City of Tacoma*, 124 Wn. App. 454, 464, 98 P.3d 827 (2004).

An adverse employment action is defined as "one that materially affects the terms, conditions or privileges of employment." 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 330.01.02 (7th ed. 2019). "An actionable adverse employment action must involve a change in employment conditions that is more than an 'inconvenience or alteration of job responsibilities.'" *Kirby*, 124 Wn. App. at 465 (quoting *DeGuiseppe v. Vill. of Bellwood*, 68

F.3d 187, 192 (7th Cir.1995)). Under the federal standard, an adverse employment action is generally a tangible employment action that constitutes a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998).

In *Kirby*, the plaintiff, a police officer, was the subject of multiple IA investigations during the course of his employment. 124 Wn. App. at 461. The plaintiff alleged multiple adverse actions in support of his claim of retaliation, including the investigations themselves. *Kirby*, 124 Wn. App. at 465. This court held, "[t]he other alleged events, however, were disciplinary or investigatory in nature and, therefore, do not constitute adverse employment actions under the cases cited above. At most, these events were inconveniences that did not have a tangible impact on Kirby's workload or pay." *Kirby*, 124 Wn. App. at 465.

Here, Sidibe alleges that the trial court interpreted Kirby to establish a "bright line rule" that internal investigations can never constitute an adverse employment action. Neither the court's oral ruling nor the written order offer support for this allegation. *Kirby* stands for the proposition that courts must consider the impact of the investigation. 124 Wn. App. at 465.

"[W]hether a particular action would be viewed as adverse by a reasonable employee is a question of fact appropriate for a jury." *State v. Boyd*, 187 Wn. App. 1, 13-14, 349 P.3d 864 (2015). In *Boyd* the plaintiff, a nurse, presented evidence that his employer investigated him for misconduct, suspended him without pay, issued a written reprimand that was disseminated to his supervisor, removed him from his ward and from patient interaction, and reported him to both the Department of Health and the police. *Boyd*, 187 Wn. App. at 14. The court stated, "[w]e express no opinion as to whether these employment actions, taken individually, constituted adverse

employment actions as a matter of law. However, taken in context, a reasonable jury could find that these actions, taken together, were materially adverse." *Boyd*, 187 Wn. App. at 14.

In *Blackburn*, hospital management explicitly decided not to allow Black employees to work on a particular ward over the course of one weekend. 186 Wn.2d at 259. Their "overt race-based directives affected staffing decisions in such a manner as to constitute discrimination." *Blackburn*, 186 Wn.2d at 259.

Here, Sidibe can prove a set of facts, consistent with the complaint and within the realm of reasonable hypotheticals, that would entitle him to relief. We reverse.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Worswick, P.J.

Cruser, J.