# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| BRYAN WORLAND,<br><br>Appellant,<br><br>v.<br><br>KITSAP COUNTY,<br><br>Respondent. | No. 57366-1-II<br><br><br>ORDER GRANTING MOTION TO<br>PUBLISH AND PUBLISHING OPINION |

Respondent, Kitsap County, filed a motion to publish the opinion filed in the above entitled matter on February 13, 2024 pursuant to RAP 12.3(e). Appellant, Bryan Worland, filed a response on March 21, 2024. After consideration, the court grants the motion. It is now

**ORDERED** that the final paragraph in the opinion which reads "A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered." is deleted. It is further

**ORDERED** that the opinion will now be published.

**PANEL:** Jj. Glasgow, Veljacic, Che

**FOR THE COURT:**

_____
PRESIDING JUDGE

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| BRYAN WORLAND, | No. 57366-1-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| KITSAP COUNTY, | |
| Respondent. | |

CHE, J. — Bryan Worland appeals the trial court's grant of summary judgment for the Utility Division of Public Works of Kitsap County (County) on a claim for wrongful termination in violation of public policy. Worland worked as a maintenance and operation specialist for the County. The County terminated him in February 2020. The Union filed a grievance seeking Worland's reinstatement, which proceeded to arbitration. An arbitrator determined the County terminated Worland for just cause.

Worland subsequently brought this action for wrongful termination in violation of public policy. The trial court granted summary judgment for the County based on res judicata and collateral estoppel. We hold that the trial court properly granted summary judgment based on collateral estoppel and we need not reach res judicata. Thus, we affirm.

No. 57366-1-II

FACTS

Worland worked for the County in various roles from 2012 to February 13, 2020. Teamsters Local 589 (Union) and the County were parties to a collective bargaining agreement (CBA) from January 1, 2019 to December 31, 2021 that governed the terms of Worland's employment. Worland was a member of the Union. Under the CBA, an aggrieved employee may attempt to resolve disputes with the County through the CBA grievance procedure. If the grievance is not satisfactorily resolved, the Union may submit the matter to arbitration. The CBA also provides that the arbitrator's decisions "shall be final and binding on both parties." Clerk's Papers (CP) at 86.

At some point, Worland alleged that the County failed to properly compensate him for overtime. He maintained that the County ordered him to change his time card to omit overtime he had claimed. And when Worland refused, the County began retaliating against him in a myriad of ways. Around July 2019, Worland met with the Assistant Director of Public Works of the Utilities Division (Assistant Director) to discuss alleged harassment Worland suffered over the past couple years—some of the harassment related to Worland's use of sick leave.

The Assistant Director received several allegations of misconduct regarding Worland, and in December 2019, the Assistant Director asked the County's Department of Human Resources to investigate the allegations. Subsequently, the County held a pre-termination hearing. In February 2020, the County terminated Worland based on seven categories of alleged misconduct.

Worland filed a grievance of his termination through his Union. The Union sought Worland's reinstatement and hired a lawyer to represent Worland in the grievance proceedings.

2

Worland wanted his personal counsel to accompany him through the grievance process, but the Union would not allow it. The Union argued that the County lacked just cause to terminate Worland as required by the CBA, and that the County failed to investigate Worland's concerns about harassment in the workplace. The Union also argued that two employees improperly collaborated to oust Worland, and the subsequent investigation was just a pretext[1] to terminate Worland.

The grievance went to arbitration, which involved developing documentation of the allegations, cross examining witnesses, and hearing arguments. The Union's attorney represented Worland, and the Union did not allow Worland's personal attorney to participate in the arbitration. But Worland decided to proceed with the arbitration anyway because (1) the arbitration "could have resolved at least part of the case," (2) Worland believed he could only receive reinstatement through arbitration, not a court proceeding, (3) the Union provided him with a free attorney and paid for the arbitration, (4) he would not have to pay his personal attorney, and (5) if he declined to arbitrate the matter, the County would argue that he failed to mitigate his damages. CP at 166.

The arbitrator determined that the central issue was, "Did the termination of [Worland] satisfy just cause as defined in Article 13 of the CBA?" CP at 45. "Just cause" was defined as "a fair and honest reason supported by substantial evidence and reasonably believed by the

---

[1] Worland had previously complained that the County retaliated against him for their overtime disagreement and that employees harassed him for his use of sick time.

[County] to be true." CP at 45. Under this standard, the arbitrator concluded that he had to determine that the County did not rely on the evidence as a pretext and that there were not "sufficient facts that should have dissuaded the County from reaching its conclusions." CP at 59.

The arbitrator determined five of the seven misconduct allegations were supported by substantial evidence. The arbitrator also determined that Worland received due process during the investigation that led to his termination, rejecting the Union's argument that the termination was pretextual or the result of coworker collaboration to oust Worland.

The arbitrator also examined Worland's workplace concerns about harassment—noting that Worland's journal contained allegations of coworkers' inappropriate gestures and comments. The arbitrator noted, even though Worland declined to provide the names of the allegedly harassing employees to the Assistant Director, the Assistant Director required supervisors to attend workplace culture training. And the arbitrator concluded that the County did not treat Worland disparately.

Thus, the arbitrator determined that the County demonstrated just cause to support the termination. Worland later sued the County for wrongful termination in violation of public policy in superior court. In his complaint, Worland alleged the County retaliated against him for complaining about underpayment and harassment.

The County moved for summary judgment arguing that Worland's claim should be barred under the doctrines of collateral estoppel and res judicata. The trial court ruled that Worland was estopped from relitigating whether he was unlawfully terminated under both doctrines and granted summary judgment.

Worland appeals.

4

ANALYSIS

Worland argues that the trial court erred by precluding the wrongful termination in violation of public policy claim based on res judicata and collateral estoppel. We disagree.

## I. LEGAL PRINCIPLES

"Claim preclusion, also called res judicata, 'is intended to prevent relitigation of an entire cause of action and collateral estoppel [also called issue preclusion] is intended to prevent retrial of one or more of the crucial issues or determinative facts determined in previous litigation.'" *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 306, 96 P.3d 957 (2004) (footnote omitted) (quoting *Luisi Truck Lines, Inc. v. Wash. Utils. & Transp. Comm'n*, 72 Wn.2d 887, 894, 435 P.2d 654 (1967)). Where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, summary judgment is proper. *Billings v. Town of Steilacoom*, 2 Wn. App. 2d 1, 14, 408 P.3d 1123 (2017).

We view all reasonable inferences from the facts in the light most favorable to the nonmoving party and review summary judgments de novo. *Id*. We review whether collateral estoppel and res judicata apply de novo. *Id*.; *Ensley v. Pitcher*, 152 Wn. App. 891, 899, 222 P.3d 99 (2009).

## II. COLLATERAL ESTOPPEL

To establish collateral estoppel, the proponent must establish the following elements,

> (1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied.

*Billings*, 2 Wn. App. 2d at 15 (quoting *Hadley v. Maxwell*, 144 Wn.2d 306, 311, 27 P.3d 600 (2001)).

Division Three has held that three additional factors, developed in the administrative agency context, should also be considered as part of the injustice element when the prior action was an arbitration. *Scholz v. Wash. State Patrol*, 3 Wn. App. 2d 584, 595-96, 416 P.3d 1261 (2018). Those factors are "(1) whether the [arbitrator] acted within its competence, (2) the differences between procedures in the [arbitration] and court procedures, and (3) public policy considerations." *Id*. Division Three defined the competency factor in this circumstance as "whether the issue was within the scope of the reference to arbitration." *Id*.

Collateral estoppel may apply to issues resolved in labor arbitrations. *Billings*, 2 Wn. App. 2d at 16. In *Billings*, Steilacoom terminated Billings for poor performance and violating numerous policies. *Id*. at 10. Billings filed a grievance with the help of his union. *Id*. An arbitrator determined just cause supported the termination based on unsatisfactory performance and insubordination, among other things. *Id*.

Billings filed a lawsuit against Steilacoom on five grounds, including wrongful termination in violation of public policy. *Id*. at 11. Steilacoom moved for summary judgment arguing that collateral estoppel precluded the wrongful termination claim, which the trial court granted. *Id*. at 12. On appeal, we affirmed concluding that collateral estoppel precludes all of Billing's state law claims. *Id*. at 13.

Here, the parties in the labor arbitration and the subsequent litigation are the same.[2] The decision by the arbitrator constituted final judgment on the merits.[3] Moreover, the issue of whether Worland was terminated for just cause was clearly within the scope of reference of the arbitration as it was the central issue. Additionally, the arbitration procedures appear sufficiently similar to in-court procedures.[4] Worland provides extensive argument regarding the identical issues and injustice elements of collateral estoppel, and so, we will address them in more depth. We will also address the public policy consideration factor referenced in *Scholz* in our analysis of the injustice element below.

A.    *Identical Issues*

Worland argues that the proceedings did not have identical issues because he is asserting a cat's paw theory of liability, and the employer must prove an overriding consideration, which is more than a justification, to show an affirmative defense to the wrongful discharge claim. We disagree.

We note that the second claim is always different from the first claim. *Scholz*, 3 Wn. App. 2d at 596. For purposes of collateral estoppel, "[w]hat matters is whether *facts* established in the first proceeding foreclose the second claim." *Id*. at 597.

---

[2] "In a labor arbitration proceeding, a union represents a plaintiff-employee. When an employee's interest is represented by his union, he is in privity with the union." *Billings*, 2 Wn. App. 2d at 18.

[3] Like in *Billings*, the CBA provided that disputes settled in arbitration would be "final and binding on both parties." CP at 86.

[4] The arbitration hearing occurred over five days. "[T]he Parties had full opportunity to call witnesses, to make arguments and to enter documents into the record. Witnesses were sworn under oath and subject to cross-examination by the opposing Party." CP at 44.

The tort of wrongful termination in violation of public policy is a narrow exception to the default at-will employment rule, creating a cause of action where the termination frustrates a clear manifestation of public policy. *Billings*, 2 Wn. App. 2d at 28. The tort may arise in the following circumstances:

> (1) where employees are fired for refusing to commit an illegal act; (2) where employees are fired for performing a public duty or obligation, such as serving jury duty; (3) where employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims; and (4) where employees are fired in retaliation for reporting employer misconduct, i.e., whistleblowing.

*Id.* (internal quotation marks omitted) (quoting *Roe v. TeleTech Customer Care Mgmt. (Colo.) LLC*, 171 Wn.2d 736, 755, 257 P.3d 586 (2011)). The tort has four elements:

> (1) The plaintiffs must prove the existence of a clear public policy (the *clarity* element).
>
> (2) The plaintiffs must prove that discouraging the conduct in which they engaged would jeopardize the public policy (the *jeopardy* element).
>
> (3) The plaintiffs must prove that the public-policy-linked conduct caused the dismissal (the *causation* element).
>
> (4) The defendant must not be able to offer an overriding justification for the dismissal (the *absence of justification* element).

*Id.* at 28-29 (internal quotation marks omitted) (quoting *Roe*, 171 Wn.2d at 756)).

In *Billings*, the arbitrator had to determine whether Billings was terminated for just cause. *Id.* To succeed in his wrongful discharge claim, Billings had to prove the public-policy-linked conduct was a substantial factor in causing his dismissal. *Id.* Consequently, we determined that the labor arbitration regarding just cause had identical issues to the wrongful termination in violation of public policy claim. *Id.* We also determined that Billings could not establish the overriding justification element for the same reasons. *Id.*

Here, the arbitrator had to determine whether Worland was terminated for just cause and whether the reasons for discharge were fair, honest, and supported by evidence. To succeed on his wrongful termination claim, Worland must prove his public-policy linked conduct was a substantial factor in the County's decision to terminate him. We hold that the labor arbitration and the wrongful discharge claim have identical issues consistent with our precedent in *Billings*. The labor arbitrator's determinations that the County's reasons for terminating Worland were fair, honest, supported by substantial evidence, and not pretextual precludes Worland from establishing the causation and absence of justification elements of his wrongful discharge claim.

Worland emphasizes that because he argues a cat's paw theory[5] of liability in the wrongful termination claim, it does not have identical issues with the arbitration. As stated above, the labor arbitration and wrongful discharge claim have identical issues. Whether Worland asserts a cat's paw theory of liability does nothing to change that.

During the arbitration, the Union, on behalf of Worland, argued that the ultimate investigative result was tainted by two employees' improper collaboration to oust Worland. "Thus, in essence the Union allege[d] that the investigation was conducted, not to obtain objective evidence, but to support the County's decision to rid itself of [Worland]." CP at 67. As such, Worland essentially raised his cat's paw theory argument below, in all but name. And the arbitrator rejected it.

---

[5] Under the cat's paw theory, the employer does not escape liability if an unbiased decision maker disciplines an employee where a biased subordinate who lacks decision-making power clearly caused such discipline. *Boyd v. Dep't of Soc. & Health Servs.*, 187 Wn. App. 1, 6 n.1, 349 P.3d 864 (2015).

B.      *Injustice and Public Policy Considerations*

Worland argues a substantial injustice would result from applying collateral estoppel because it would deny him the right to a jury trial and the right to choose his attorney, and because, generally, employers could argue that employees failed to mitigate their damages by not pursuing arbitration.  We disagree.

The injustice component of collateral estoppel focuses on procedural irregularities, not substantive ones.  *Christensen*, 152 Wn.2d at 309.  That focus "is consistent with the requirement that the party against whom the doctrine is asserted must have had a full and fair opportunity to litigate the issue in the first forum."  *Id*.  Where the issue is first determined in an an informal, expedited hearing with relaxed evidentiary rules, collateral estoppel may be improper.  *Id*.

In *Billings*, we rejected an argument that Billings would be denied the right to a jury trial if collateral estoppel precluded his claims because the parties agreed to a binding arbitration in the CBA.  2 Wn. App. 2d at 20.  We also noted that Billings did not file a jury demand before the deadline.  *Id*.  Additionally, our Supreme Court has noted "the fact that the union brought the claim and [the union member] was represented by a union lawyer is not a reason to deny application of collateral estoppel."  *Christensen*, 152 Wn.2d at 316 (also noting that Christensen consented to union representation, he elected to pursue administrative remedies, and the union's lawyer acted on Christensen's behalf).

We disagree with Worland's contention that *Billings* is distinguishable because we allegedly did not reach the jury trial issue in *Billings*, and the County filed for summary judgment before the deadline to request a jury trial in this case.  In *Billings*, we did reach the jury trial issue, reasoning that Billings would not be denied a right to a jury trial as he agreed to a

10

binding arbitration in the CBA. *Billings*, 2 Wn. App. 2d at 20. And like in *Billings*, Worland agreed to a binding arbitration through the CBA. Moreover, *Christensen'*s acknowledgement that an administrative decision can collaterally estop a later claim in superior court further undermines Worland's suggestion that the jury trial right prevents application of collateral estoppel where the prior decision was not made by a jury. As such, we disagree that collateral estoppel would work an injustice based on the lack of a jury trial in this circumstance.

Regarding the Union's refusal to allow Worland's private counsel to aid him in arbitration, Worland does not suggest that the union lawyer was ineffective. Rather, Worland maintained that the Union paying for a union attorney to represent Worland raises ethical implications under RPC 1.8.[6] Worland appears to also argue that the union lawyer did not represent his interests because the Union paid the lawyer, and the lawyer represented the Union in the arbitration, not Worland. But the duty of fair representation requires unions to serve the interests of their members without discrimination or hostility to any of their members, to exercise their discretion with complete good faith and honesty, and to avoid arbitrary conduct. *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44, 119 S. Ct. 292, 142 L. Ed. 2d 242 (1998). And Worland failed to identify any individual action the union attorney took that was contrary to his interests.

Moreover, Worland recognized he was proceeding without his preferred attorney but decided to do so for a myriad of reasons: to gain the representation of a free union attorney and

---

[6] To the extent Worland's argument raises concerns about possible ethics violations, we note that "'breach of an ethics rule provides only a public, e.g., disciplinary, remedy and not a private remedy.'" *Just Dirt, Inc. v. Knight Excavating, Inc.*, 138 Wn. App. 409, 417, 157 P.3d 431 (2007) (quoting *Hizey v. Carpenter*, 119 Wn.2d 251, 259, 830 P.2d 646 (1992)).

no cost arbitration, to acquire arbitration remedies, to resolve "at least part of the case and I had paid union dues for years," and to avoid a later argument, he believed the union would raise, that he failed to exhaust his remedies and mitigate his damages if he declined to arbitrate. CP at 165-66. We conclude that Worland had a full and fair opportunity to litigate this matter in the arbitration. Worland weighed the consequences and benefits of proceeding with the arbitration without his preferred counsel and decided to do so. Whatever injustice, if any, Worland suffered from being denied his preferred counsel is not sufficient to preclude collateral estoppel under these circumstances.

Lastly, Worland appears to argue that public policy weighs against applying collateral estoppel based on any prior union arbitration because if the employee declines the union arbitration, the employer could potentially argue that the employee failed to mitigate their damages. We note that Worland failed to cite any authority to support this argument as required by RAP 10.3(a)(6). To the extent that these concerns exist, they exist within the arbitration context more generally. And our State has a strong public policy in favor of the finality of arbitration determinations. *Billings*, 2 Wn. App. 2d at 16. In light of our State's strong public policy, we decline to preclude collateral estoppel based on Worland's general public policy concerns about arbitration.

In sum, we hold that collateral estoppel bars relitigating the wrongful termination claim. Because we hold that collateral estoppel bars Worland's lawsuit, we decline to reach the res judicata issue as we may affirm summary judgment on any ground supported by the record.[7]

---

[7] *Port of Anacortes v. Frontier Indus., Inc.*, 9 Wn. App. 2d 885, 892, 447 P.3d 215 (2019).

No. 57366-1-II

## CONCLUSION

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Glasgow, C.J.

Veljacic, J.